# WHEELING.

## STATE *v*. PLANTS.

Submitted January 11, 1884.—Decided November 15, 1884.

1. If upon the hearing of a writ of *habeas corpus* the court or judge is satisfied, that the offence, for which the prisoner was held, was committed within the jurisdiction of the court, the prisoner should not be discharged, although the process, on which he was arrested and committed, was informal and not in compliance with the law.   (p. 122.)

2. The jurisdiction of West Virginia is co-extensive with the water of the Ohio river while confined within its banks.   (p. 122.)

3. The State of West Virginia in the proper county has jurisdiction of offences committed on a boat, which is afloat on the Ohio river while confined within its banks, whether such boat is or is not fastened to some object on the bank.   (p. 122.)

4. P. opposite to Ravenswood in Jackson county West Virginia on the Ohio side of the Ohio river sold spirituous liquors in a boat, which was afloat on the river beyond low water mark but fastened by a rope to the bank.   HELD:

   The offense, if one was committed within the jurisdiction of West Virginia.   (p. 122.)

The opinion of the court contains a sufficient statement of the case:

*G. J. Walker* and *W. Miller*, for plaintiff in error.

*Attorney-General Watts* for the State.

JOHNSON, PRESIDENT:

This is a writ of error to the judgment of the judge of the

circuit court of Jackson refusing to discharge the prisoner on a writ of *habeas corpus.* The petition alleges, that complaint was made before W. C. Ernst, a justice of said county, that on the 21st day of March, 1880, the petitioner "did sell or offer for sale spirituous liquors, and that he, the complanant, had cause to believe and did believe, that such spirituous liquors were sold or offered for sale in a boat owned and occupied by petitioner lying opposite or near the town of Ravenswood in the said county of Jackson and State of West Virginia. And thereupon the said justice on the 22d day of March, 1880, issued his alleged process purporting to be a warrant directed to any constable, &c. to bring the party before him to answer the complaint and to be dealt with according to law;" * * * "that the officer came on his boat being then and there in the State of Ohio and within and under the jurisdiction thereof, and not in the State of West Virginia or within the jurisdiction or territory of the State aforesaid, that is to say, that said petitioner was at the time last aforesaid on his said boat, which was fastened and moored to the bank of the Ohio river on the Ohio side thereof; that said river was at the time aforesaid at high stage; that the said boat and petitioner were at the time aforesaid wholly without the jurisdiction and territory of the said State of West Virginia and were wholly within the territory of the said State of Ohio;" * * * "that petitioner was by said officer illegally and forcibly brought to West Virginia and carried before said justice, who committed him to the jail of said county to be there kept until discharged according to law." Petitioner alleges that the warrant was issued without such complaint, as the law requires; that said warrant, on which he was arrested, is illegal and void; and that he is not guilty of any offence against the laws of West Virginia. He further says that the commitment was illegal and void. He prayed for a writ of *habeas corpus*, &c.

The commitment recites, that the justice required of the defendant, Plants, bail in the sum of $100.00 for his appearance to answer an indictment for the offence, with which he was charged, which bail he failed to produce, and in default thereof he was committed to jail. The writ of *habeas corpus* issued from the judge of the circuit court of Jackson

county in vacation on the 23rd day of March, 1880. The writ issued to the jailor of the county, in whose custody the prisoner was, and on the same day he made return, that he held the prisoner by virtue of the warrant and *mittimus* issued as aforesaid. On the said 23rd day of March, 1880, the judge of the circuit court of Jackson county in vacation entered an order reciting, that said Plants was brought before him on writ of *habeas corpus* issued because of the warrant of arrest and commitment issued by justice W. C. Ernst, and proceeds as follows: "And thereupon the petitioner moved the said judge to quash said warrant of arrest and commitment and discharge petitioner from custody, which motion being argued and considered is overruled, and it appearing to me from the said commitment and the evidence adduced in said matter, that the said A. J. Plants is lawfully and properly detained by the said jailor, I therefore remand the said A. J. Plants, to the custody of the said jailor in the jail of said county to be therein kept, until he be discharged by due course of law."

To the judgment the prisoner excepted, and the judge signed and sealed a bill of exceptions, which sets out the material facts of the case including the warrant and commitment. From the bill of exceptions it appears, "that on the 21st day of March, 1880, the sale of spirituous liquors mentioned in the complaint, warrant and *mittimus* in this proceeding was made to said complainant, J. W. Dye, by petitioner on petitioner's boat, which then lay on the Ohio side of the Ohio river opposite the town of Ravenswood; that the river was at the date aforesaid at a high stage; that said boat was tied by a cable at the time of said sale to the bank on the Ohio side of the river; that said boat was against the willows growing on the Ohio shore and against the bank on the Ohio side; that a plank from ten to twelve feet long extended from said boat to the bank on the Ohio side; that the said boat at the time of said sale was wholly and at least ninety yards within low water mark at that point, and would have been that distance on the shore on the Ohio side of said river, if said river had then been at low water mark, and that said boat was and would have been wholly within and beyond the water on the Ohio shore, if said river had then been

at a medium stage, but that said boat would have been within the banks of said river."

The first assignment of error is, that the judge refused to look into the warrant of arrest and commitment, under which the petitioner was detained. There is nothing in the record to show, that the court did not examine the warrant and commitment, but the contrary appears. It seems to me, the warrant and commitment are both in substantial compliance with the law. But if the court or judge was satisfied, that an offence had been committed within the jurisdiction of the court, although the process by which the prisoner was arrested and committed was informal and not in compliance with the law, he should not discharge the prisoner on a writ of *habeas corpus. Rex* v. *Mark,* 3 East. 157; *Ex parte Keans,* 1 B. & C. 258; Susannah Scott, 9 B. & C. 446; *State* v. *Brewster,* 7 Vt. 118; *United States* v. *Lawrence,* 13 Blatch. 306; *People* v. *Rowe,* 4 Parker C. R. 253.

The main question presented in this case is: Did the State of West Virginia have jurisdiction of the offence committed? Was the offence committed within the jurisdiction of Jackson county or within the exclusive jurisdiction of Ohio? If it was committed within the exclusive jurisdiction of Ohio, then the prisoner should have been discharged; but he should have been remanded, and the judgment is right, if the offence was committed within the jurisdiction of West Virginia.

In *Handley's lessee* v. *Anthony,* 5 Wheat 375, in which case Chief Justice Marshall announced the opinion of the whole court, the question was, whether a grant issued from the State of Kentucky to a tract of land or a grant from the United States, when the land was supposed to be in the territory of Indiana, was valid; and this raised the question, as the court held, what was the true construction of the Virginia deed of cession of the Northwest territory to the United States made in 1783, and what was the true boundary between the States of Kentucky and Indiana? The court held, that the boundary of the State of Kentucky extended only to low water mark on the Western or Northwestern side of the Ohio river. The Chief Justice conceded in that case, that Virginia had not ceded to the United States any part of the Ohio river but had retained in her own territory the whole of said river;

but he defined the river to be the *water* at low water mark.

The only case in Virginia on the subject of the boundary between Virginia and Ohio is Garner's case, 3 Gratt. 655. Garner and two others were indicted in the superior court of Wood county at the September term, 1845, for enticing away six slaves of John H. Harwood. The second count charged, that they carried out of the State the said six slaves; the third, that they assisted the said slaves to escape. The prisoners pleaded not guilty, and the jury found a special verdict, in which it appeared, that the prisoners went under the bank of the river and remained there some distance above the water on the beach until about one or two o'clock at night, when a canoe with six slaves, the property of J. H. Harwood, crossed the river to the Ohio shore. As it came near the shore, the party under the bank gave it a sort of hail, to which an answer not distinctly heard was returned from the canoe; that said negroes landed said canoe obliquely against the bank, running the bow on the beach at the water's edge. As soon as the canoe struck the shore the prisoners came to the bow of the canoe at the water's edge and without entering the canoe stepped into the water at the bow and assisted the negroes to take their articles of property out of the canoe. The party in ambush seized the prisoners as well as the negroes except one and carried them across the river to Virginia and took the prisoners to jail. It further appeared, that the spot, where the offence was committed, was between low water mark and high water mark.

The case was adjourned to the general court of Virginia for novelty and difficulty arrising on the special verdict. The questions adjourned were :

"First—From the facts found was the offence committed within the jurisdiction of the court?

"Second—What is the territorial boundary of Virginia on the northwestern side of the Ohio river? Is it the lowest water mark, or is it the ordinary low water mark; or does it extend to the water mark made by the river, when it is at its average depth, as found by the verdict, or does it extend to the top of of the banks?

"Third—Is the jurisdiction of Virginia co-extensive with the water, while it is confined within its banks?

"Fourth—What is the effect of the grant of Virginia in her compact with Kentucky of concurrent jurisdiction to other States possessing the opposite shore of the Ohio river upon the jurisdiction of Virginia on the said river?

"Fifth—What judgment ought this court to give on the said special verdict?"

The case was heard by fourteen judges at the December term, 1846, of the general court. The judges sitting in the case were Smith, Lomax, Scott, Brown, Duncan, Fry, Clopton, Baker, Christian, Wilson, Johnson, Robertson, McComas and Taliaferro. The court answered but two of the questions adjourned, the first and the fifth. The first it answered, that from the facts found the offense charged was not committed within the jurisdiction of the court of Wood county or of the state of Virginia. To the fifth, that judgment ought to be rendered in favor of the prisoners. Judges Scott, Baker, Christian, Robertson and McComas dissented from the opinion of the court. Judge Christian filed no opinion, but the other dissenting judges distinctly held in learned arguments, that the river is composed of its bed, shores and banks as well as of the water that flows between the banks, and that the language in the deed of cession "of the territory northwest of the Ohio river" conveyed no part of the river, and that the boundary therefore between the two States is ordinary high water mark. Judge Duncan concurred with the majority in the judgment, that the prisoner ought to be discharged, but put it on technical grounds and expressed no opinion on the question of boundary. Judges Johnson, Clopton, Wilson and Taliaferro agreed fully with the Supreme Court of the United States in *Handley's lessee* v. *Anthony,* that the boundary between Virginia and Ohio was low water mark. Smith and Brown concurred in the judgment but gave no reasons therefor. Judges Fry and Lomax delivered elaborate opinions, in which they approved the decison of the Supreme Court of the United States but maintained, that nevertheless Virginia had jurisdiction on the river at all times, while it was within its banks. Judge Fry says, p. 758:

"The jurisdiction may extend to whatever is afloat upon the water. Yet is there no exception to this nor any limit to the jurisdiction, short of the utmost verge of the current?

Does it extend to vessels that have entirely passed low water mark and reached the shore of the Ohio and there rest upon it wholly above low water, and to the acts of persons standing on the shore at the verge of the water but in it? We have seen that Judge Reed states it has been decided in Ohio that if a boat be attached to either shore, for the purpose of civil and criminal process the jurisdiction was exclusive in the State to which it was attached. He perhaps alludes to the case reported 1. West. Law Journal wherein it was adjudged that an attachment by process from Kentucky levied on a boat lying at the wharf at Cincinnati and fastened to the wharf, was not lawful. The boat was fully afloat, and lying with her stern at least (if I remember aright) below low water mark. If the principle of the decision be correct it seems to me to apply *a fortiori* to the case before us. In examining it we should consider that we are probably deciding the law for the Virginia shore as well as that for the Ohio. Whatever rights we claim upon her shore we have perhaps accorded to her upon our own by the grant of concurrent jurisdiction. Was it well decided and proper to be admitted and followed by this court? It seems to me that the principle is expedient, necessary and well founded. * · * But whether a boat so afloat and fastened be within the exclusive jurisdiction or not, it seems to me that a citizen of Ohio standing upon her soil above low water, or a boat resting on her shore above the same is within the jurisdiction of Ohio, and so the *locus delicti* without the county of Wood; and that consequently there should be judgment for the prisoners."

Judge Lomax, after discussing the question at p. 784, said: "My opinion therefore is, that the second position of the Commonwealth's counsel has been sustained; that the jurisdiction of Virginia extends over the entire body of water constituting the river at any given time." * * "Had the place where the prisoners were standing been left bare at the time by the refluent waters, my opinion would have been that the courts of Virginia would have no jurisdiction of the offence. Had it been committed entirely upon the water (*e. g.* in a boat floating upon the river,) then my opinion would have been that the offence was committed within the domain,

and consequently within the jurisdiction of Virginia. The peculiarity and novelty of this case is that the jurisdiction of Virginia in respect to the waters of the river, is asserted over persons who, in respect of the land upon which they stood, were exclusively within the jurisdiction of Ohio."

I do not propose to make any extended review of the arguments used either in the case in 5th Wheaton or in Garner's case. In the former case the court, it seems to me, gave a wrong definition to the term *river*. It is there called the *permanent* stream, that is, the stream always there; then it must mean the water when it is at the lowest. If this be true, the *ab inconveniente* argument is not good, because common observation tells us, there is a considerable space on the shore between extreme low water mark and ordinary low water mark. Which State would have jurisdiction over this space? The best authors do not confine a river to the water at any given stage. Judge McComas in same case, p. 682, says; "The most approved of these writers (on the laws of nations) define a river to consist of the water, the bed and the banks. It is a compound idea; it cannot exist in the absence of any of its constituent parts. Deprive it of a bank, and it loses its character of a river. Take from it its bed, and the same consequences ensue. It cannot be confined to the simple term *water*, because that is only an ingredient of the compound. Then you must necessarially associate the bed, the banks and the water, to constitute any idea of the term *river*." This court in the case of *Ravenswood* v. *Flemings*, 22 W. Va. held, that it required the bed, shores and banks as well as the water, to constitute the Ohio river. And we then held, that the State of West Virginia held title in trust for the public of the whole of said river including its bed, shores and banks, so far as it traversed its territory. Speaking for myself, I agree with the dissenting judges in Garner's case, that ordinary high water mark on the Northwestern side of the Ohio river is the boundary between the State of West Virginia and Ohio.

But it is not necessary to decide this question in this case. The question here presented was not decided in Garner's case. The question here is the *third* one adjourned to the general court in that case: "Is the jurisdiction of West Virginia co-extensive with the water, while it is confined within its

banks?" We are in this case prepared to hold, that the jurisdiction of West Virginia is co-extensive with the water of the Ohio river, while it is confined within its banks, and that the State in the proper county has jurisdiction of offences committed on a boat afloat on the Ohio river while confined within its banks, whether such boat is or is not fastened to some object on the bank. If this were not so, our citizens might with impunity violate our revenue and other laws. But without regard to the consequences, which might follow, if the State did not possess such jurisdiction, Virginia, which confessedly owned before the cession the territory, through which the Ohio river runs, did not cede away her jurisdiction over the waters of the river, no matter what the stage was, so long as it was confined within its banks.

There is no error in the judgment of the judge of the circuit court of Jackson county, and it is therefore affirmed.

AFFIRMED.