## Meyler v. Wedding, Etc.

APPEAL FROM WARREN CIRCUIT COURT.

1. CONSTITUTIONAL LAW—JURISDICTION—STATE LINE.—The jurisdiction of the State of Kentucky extends to low-water mark on the Indiana side, and a judgment rendered by a court of Indiana upon a service of process on the Ohio river south of low-water mark is void.

2. SAME—VIRGINIA COMPACT.—The word "jurisdictions" as used in the eleventh section of the compact with Virginia means legislative jurisdiction for the purpose of keeping the Ohio river open to navigation, and does not convey jurisdiction for the service of civil process.

R. J. MEYLER FOR APPELLANT. (WRIGHT & McELROY OF COUNSEL.)

On jurisdiction: Wood v. Wood, 78 Ky., 624; Gebhard v. Garnier, 12 Bush, 324; 26 Am. Rep., 726; Thompson v. Whitman, 18 Wallace, 457; Grover & Baker S. M. Co. v. Radcliff, 137 U. S., 287, 670; 2 Black on Judgments, p. 837; Shepherd v. Wright, 59 How., 512; 31 Am. Rep., 322; 31 N. W. R., 477; 4 J. J. Mar., 158; 3 Dana, 279; 6 B. Mon., 500; 2 Met., 394; 81 Ky., 196.

JOHN B. RODES FOR APPELLEES.

On the question of jurisdiction: First, second and third Constitutions of Kentucky; Debates Const. Conv., vol. IV., pp. 4846-4866; Green v. Biddle, 8 Wheat., 1-85; Fowler v. Halbert, 4 Bibb., 54; Dembitz Ky. Jur., p. 17, sec. 6.

Meyler v. Wedding, &c.

BYRON RENFROW ALSO FOR APPELLEE.    (JOHN B. RODES OF COUN-
SEL.)

Additional citations: McFall v. Com., 2 Met., 394; Constitution of
Indiana, art. 14, sec. 222; Sherlock v. Alling, admr., 44 Ind.,
184; Pennsylvania v. Wheeling Bridge Co., 13 How., 566; Com-
pact of 1789.

LOUIS I. AHLERING ON THE SAME SIDE.    (BYRON RENFROW AND
JOHN B. RODES OF COUNSEL.)

Citations:    Compact with Virginia, Revised Laws of Va., vol.
1, p. 59; Revised Laws of Kentucky, p. 53; Rev. Stat. of Ind.,
sec. 222; Carlisle v. State, 32 Ind., 35; Dugan v. State, 125 Ind.,
130; s. c. 25 N. E., 171, 9 L. R. A., 321; Welsch v. State, 125
Ind., 71; s. c. 9 L. R. A., 664; 25 N. E., 883; Sherlock v.
Alling, 44 Ind., 184; McFall v. Com., 2 Met., 394; Garner's Case,
3 Gratt., 605; Handley's Lessee v. Anthony, 5 Wheat., 374.

(After the decision had been rendered in this case, the court
granted specially to the State of Indiana the privilege of being
heard in a petition for a rehearing and an oral argument upon
same. And thereupon WILLIAM L. TAYLOR, Attorney-General
of Indiana, with MERRILL MORRIS and CASSIUS C. HADLEY
of counsel, filed a brief in which he insisted):

1. That a reversal of the judgment of the Warren Circuit Court was
a violation of the Constitution of the United States in two re-
spects:    (a) It tended to impair the Virginia compact which
was a contract of the Commonwealth of Kentucky, and thus
violated art. 1, sec. 10 of the Constitution of the United States
as fully as might any act of legislation impair the obligation of
that contract; and (b) it denied to the Indiana Court and its
proceedings the full faith and credit guaranteed by art. 4, sec. 1.

Upon said point counsel made the following citations:    Va.
Compact of 1789, Ky. Stat., 1894, p. 43; Act admitting Kentucky,
Ky. Stat., 1894, p. 46; first three Kentucky Constitutions, Ky.
St., 1894, pp. 52, 62, 78; Fowler v. Halbert, 4 Bibb., 54; Church
v. Chambers, 3 Dana, 278; Arnold v. Shields, 5 Dana, 22; Mc-
Fall v. Com., 2 Met., 398; Louisville Bridge Co. v. Louisville, 81
Ky., 194; Garner's Case, 3 Gratt., 674, 709; State v. Plants, 25
W. Va., 119; Handley v. Anthony, 5 Wheat., 385; Green v. Bid-
dle, 8 Wheat., 85; Penn. v. Wheeling Bridge Co., 13 How., 566;
Carver v. Astor, 4 Pet., 101; Hawkins v. Barney, 5 Pet., 457;
Charles River Bridge v. Warren Bridge, 11 Pet., 582; McKinney
v. Carroll, 12 Pet., 66; Pollard v. Kibbe, 14 Pet., 413; Bronson
v. Kinzie, 1 How., 316; Penn. v. Wheeling Bridge Co., 18 How.,
432; Lavin v. Savings Bank, 1 Fed. Rep., 655; United States v.

Meyler v. Wedding, &c.

New Orleans, 17 Fed. Rep., 488; Griswold v. Bragg, 48 Fed. Rep., 522; Leighton v. Young, 52 Fed. Rep., 444; Wharton v. Wise, 153 U. S., 155; New Jersey v. Wilson, 7 Cranch, 164; Providence Bank v. Billings, 4 Pet., 504; Woodruff v. Trapnall, 10 How., 190; Wolff v. New Orleans, 103 U. S., 358; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S., 672; Vattel. Law of Nations, book 1, secs. 203, 204, 295; Constitution of United States, art. 1, sec. 8; Ky. Stats., 1894. secs. 2831, 2852, 3058, 3039, 3290, 3490; Board of Trustees of Falmouth v. Watson, 5 Bush, 660; Lutz v. Crawfordsville, 109 Ind., 466; Emerich v. Indianapolis, 118 Ind., 279; Kaufle v. Delaney, 25 W. Va., 410; Flack v. Fry, 32 W. Va., 364; Neal v. Com., 17 S. & R., 67; Coldwater v. Tucker, 36 Mich., 474; Gould v. Rochester, 105 N. Y., 46; Indiana Acts, 1830, pp. 180, 182; McFadin v. State, 1 Ind., 557; Indiana R. St., 1843, p. 66; Indiana Constitution, 1851, art. 14, sec. 2; 1 Ind. Rev. Stat., 1852, p. 197; 1 Indiana Rev. Stat., 1876, p. 222; Ind. Rev. Stat., 1881, sec. 4207; 2 Ind. Rev. Stat., 1894, sec. 5544; Carlisle v. State, 32 Ind., 55; Sherlock v. Alling, 44 Ind., 184; s. c. 93 U. S., 99; Dugan v. State, 125 Ind., 130; s. c. 9 L. R. A., 321; Welsh v. State, 126 Ind., 71; s. c. 9 L. R. A., 664; Memphis & Cin. Packet Co. v. Pikey, 142 Ind., 304; Gilbert v. Moline Water Power Co., 19 Iowa, 319; State v. Mullen, 35 Iowa, 199; McGinnis v. Pontiac, 5 McLean, 359; Seven Coal Barges, 2 Biss., 300; The Lewellen, 4 Biss., 156; Ky. Stats., 1894, secs. 1144, 1143, 1146, 1147, 3039; 12 Am. & Eng. Ency. of Law, 296; Rapalje & Lawrence's Law Dict., Bouvier's Law Dict.; Wiggins Ferry Co. v. Reddig, 24 Ill. App., 265; Opsahl v. Judd, 30 Minn., 129; State v. George, 60 Minn., 505; State v. Cameron, 2 Pinney (Wis.), 495; Keator Lumber Co. v. St. Croix Boom Corp., 72 Wis., 95; Sanders v. N. O. & St. L. Anchor Line, 97 Mo., 26; Swearingen v. Steamboat Lynx, 13 Mo., 519; State v. Metcalf, 65 Mo. App., 681; State v. Plants, 25 W. Va., 119; State v. Mullen, 35 Iowa, 199; Buck v. Ellenbolt, 84 Iowa, 394; s. c. 15 L. R. A., 187; Com. v. Frazee, 2 Phila., 365; Cooley v. Golden, 52 Mo. App., 229; Missi. & Mo. Br. Co. v. Ward, 2 Black, 483; In re Mattson, 69 Fed. Rep., 535; Indiana v. Kentucky, 136 U. S., 509; Edwards County v. White County, 85 Ill., 392; Constitution of United States, art. 1, sec. 10; art. IV, sec. 1.

LOUIS I. AHLERING with J. P. RODES and BYRON RENFROW of counsel, filed a petition for a rehearing.

Additional citations:	The Norma, 32 Fed. Rep., 411; 12 Am. & Eng. Ency. of Law, 244; 23 Am. & Eng. Ency. of Law, 298; Rorer on Interstate Law, p. 437; Gould on Waters, sec. 71, p. 142; 16 Am. & Eng. Ency. of Law, 258; Atcheson v. Endless Chain

Meyler v. Wedding, &c.

Dredge, 40 Fed. Rep., 253; Gilbert v. Moline, 19 Iowa, 321; Com. v. Frazee, 5 Am. Law Reg. (O. S.), 167; s. c. 2 Phila., 191.

In response to the petition for a rehearing JOHN W. RAY, for the appellees, filed a brief in which he made the following citations: 6 Ohio, 505; 6 Blackford, 280; Sturgis v. Fay, 16 Ind., 429; Vattel Law of Nations, sec. 203; Story Conflict of Laws, sec. 538; 33 Me., 414; 99 Mass., 267; 1 Cushing, 23; 30 Vt., 292; 10 Iowa, 575; 47 Iowa, 307; 7 Lans. (N. Y.), 388; 4 Paige, 425, 7 Watts & S. (Pa.), 451; 8 Mich., 320; 38 Mich., 765; 18 Wallace, 367; 141 U. S., 679; 173 U. S., 612; 1 Vroom, 29; 5 Wheat., 33; 3 Gratt., 673; 25 W. Va., 119.

(Upon the petitions for rehearing, the court granted an oral argument which was heard by the full court, and thereupon the petition was overruled; Judge Hobson dissenting.)

JUDGE WHITE DELIVERED THE OPINION OF THE COURT.

This action was instituted on a judgment of the Superior Court of Vanderburg county, Ind. Appellant, Meyler, defended upon the ground that the court rendering the judgment did not have jurisdiction to render the judgment. The answer admits that on May 27, 1896, the sheriff of Vanderburg county, Indiana, handed to appellant a summons directing appellant to appear before the judge of the Superior Court of the county of Vanderburg on or before June 8, 1896, to answer a petition of appellees. The answer, however, alleges that this delivery was made in the county of Henderson, this State, and that there was no service of any kind had in the county of Vanderburg. The answer further alleges that appellant did not appear in person or by attorney in that action at any time, nor was there ever a trial of the action on the merits. Appellant also denied any indebtedness to appellees on any account whatever. The allegations of the answer were denied by reply. The issue presented was tried before a jury, who were instructed to return special findings, two in number. The first question submitted is: "When the summons in this case was served upon defendant, Meyler,

on the Ohio river, was said Meyler on the Indiana or Kentucky side of the low water mark of said river where it touches the Indiana shore?" The jury answered: "On the Kentucky side of the low water mark."

Question 2: "Did defendant, Meyler, authorize J. E. Willianson to represent him as his attorney for any purpose in the Superior Court of Vanderburg, Indiana, in the suit of L. C. Wedding, etc., vs. R. J. Meyler? If so, what was the nature and extent of the authority thus given?" The jury answered: "We do not believe R. J. Meyler authorized J. E. Williamson to represent him as his attorney." The proof showed that summons was served on appellant by the sheriff of Vanderburg county while appellant was on a steamboat in the Ohio river, and also that appellant never in person appeared in that court. Appellees moved for judgment notwithstanding the special findings by the jury, and the appellant moved for a judgment of dismissal on the findings. The court sustained the motion of appellees, and rendered judgment for the amount of the judgment of the Indiana court. After appellant's motion for a new trial had been overruled, he appeals.

By the proof and special findings of the jury, it appears that appellant did not enter his appearance to the action in Indiana either in person or by attorney, and that at the time summons was served on appellant he was outside of low water mark on the Indiana shore of the Ohio river, and, of necessity, within the territorial limits of the county of Henderson, Ky. Louisville Bridge Co. v. City of Louisville, 81 Ky., 194; McFall v. Com., 2 Metc., (Ky.), 394; Handly's Lessee v. Anthony, 5 Wheat, 374, [5 L. Ed., 113].

However, it is insisted by counsel for appellees and evidently this view was held by the trial court, that, al-

though the State of Kentucky owns the soil to low-water mark on the northwestern shore of the Ohio river, the jurisdiction over the river is concurrent in the States bordering thereon; and it is insisted that, by the eleventh section of the enactment known as the "Compact with Virginia," the States north and west of the river have jurisdiction concurrent with Kentucky over the river.

In the McFall Case, *supra,* this court said: "The word 'jurisdiction,' as applied to a State and as used in the compact with Virginia, imports·nothing more than the power to govern by legislation; and, without legislative enactments to .enforce and carry out the jurisdiction so conferred, it can not, of itself, be regarded as operative, or effectual to protect the appellant, or to defeat the right of our own tribunals to enforce and execute our own penal and criminal statutes."

Section 221 of the Constitution of the State of Indiana, read as evidence, provides, as the boundary of the State, "on the south by the Ohio river from the mouth of the Great Miami river to the mouth of the Wabash river, on the west by a line drawn along the middle of the Wabash river from its mouth to a point where a due north line drawn from the town of Vincennes would last touch the northwestern shore of said Wabash river. . . ."

Section 222 of the Constitution reads: "The State of Indiana shall possess jurisdiction and sovereignty co-extensive with the boundaries declared in the preceding section, and shall have concurrent jurisdiction in civil and criminal cases with the State of Kentucky on the Ohio river, and the State of Illinois on the Wabash river so far as said rivers form the common boundary between this State and said States respectively."

The record shows that the Superior Court of Vander-

burg county that rendered the judgment had jurisdiction
of the subject-matter of that action. The only question,
therefore, that arises on this appeal, is, did that court
acquire jurisdiction of the person of appellant by the ser-
vice of the summons on him while he was afloat on the
river, and south of low water mark?

Section 11 of the compact with Virginia [13 Hen. St. Va.,
p. 19], reads: "Seventh, that the use and navigation of the
river Ohio, so far as the territory of the proposed State,
or the territory which shall remain within the limits of
this Commonwealth lies thereon, shall be free and common
to the citizens of the United States, and the respective
jurisdictions of this Commonwealth, and of the proposed
State, on the river as aforesaid, shall be concurrent only
with the States which may possess the opposite shores of
the said river."

It appears, by the Constitution of the State of Indiana,
*supra*, that that State has exercised legislative jurisdiction
over the river Ohio, and therefore is entitled to the full
benefit of the act of Virginia commonly called "Compact,"
*supra*.

We are referred in brief of counsel for appellees to sev-
eral decisions of the Supreme Court of Indiana, wherein
it is held that that State has concurrent jurisdiction with
this State over the river Ohio. We are also referred to
decisions of the States of Ohio and Virginia as holding
that, by the compact with Virginia, *supra*, the jurisdic-
tion over the river Ohio is concurrent.

The Virginia court, in Garner's Case, 3 Grat., 655, seems
to have held that the Virginia court did not have juris-
diction to try Garner for an offense against the laws of
Virginia, committed while standing in the water above
low water mark on the Ohio shore; the court holding that

the act was committed beyond the territory of the State, although in the water, a minority of the court being of opinion that Virginia jurisdiction and territory extended to the top of the bank on the Ohio side. In a subsequent case, the West Virginia Supreme Court held the view of the minority in Garner's Case, and claimed jurisdiction over the entire river, although the vessel was tied to the Ohio shore. State v. Plants, 25 W. Va., 119, [52 Am. R., 211].

The subject of concurrent jurisdiction between States bordering on a river has frequently come up for adjudication throughout the Union. In 1816 an act was passed by the Legislature of Virginia permitting the erection of a bridge across the Ohio river at Wheeling. That privilege was extended by acts till 1847. In 1849 the State of Pennsylvania brought an action in the Supreme Court of the United States, seeking an injunction against the maintenance of the bridge, because the same obstructed navigation. The court, on preliminary hearing (Pennsylvania v. Wheeling & B. Bridge Co., 9 How., 647, 13 L. Ed., 294), made an order appointing a commissioner to take proof as to the obstruction, if any, by the bridge. Subsequently (13 How., 518, 14 L. Ed., 249), upon final hearing, it was adjudged that the bridge obstructed navigation, and would have to be removed or raised, and an order was entered to that effect. In the opinion rendered in that case, it was admitted that there was ample authority to erect a bridge; that the act of the Virginia Legislature gave ample authority but that the bridge obstructed navigation, and thereby violated its charter, even were it not for the acts of Virginia ceding to the whole people the free and unobstructed navigation of the Ohio river.

The case was again before the court in 18 How., 421, 15

L. Ed., 435. It there appeared that, subsequently to the
former opinion, Congress had declared the bridge not to
be an obstruction to navigation, and had provided that all
vessels should be so regulated as not to interfere with the
bridge. The former order (13 How., 518, 14 L. Ed., 249),
was annulled.

The court said: "We have already said, and the
principle is undoubted, that the act of the Legisla-
ture of Virginia conferred full authority to erect and
maintain the bridge, subject to the exercise of the power
of Congress to regulate the navigation of the river. That
body having, in the exercise of this power, regulated the
navigation consistent with its preservation and continua-
tion, the authority to maintain it would seem to be com-
plete. That authority combines the concurrent powers
of both Governments, State and Federal, which, if not
sufficient, certainly none can be found in our system of
Government."

By the compact entered into between the States of New
Jersey and Pennsylvania in 1783, it is declared that the
river Delaware, . . . in the whole length and breadth
thereof, is and shall continue to be and remain a common
highway, equally free and open for the use, benefit and ad-
vantage of the contracting parties, and that each State
shall enjoy and exercise a concurrent jurisdiction within
and upon the water between the shores of said river. Attor-
ney General v. Delaware & B. B. R. Co., 27 N. J. Eq., 631.
This concurrent jurisdiction was held to mean that neither
State could, without the consent of the other, grant ex-
clusive privileges on the river. President, etc., River Dela-
ware Bridge v. Trenton City Bridge Co., 13 N. J. Eq., 46.
It was conceded that the boundary was the center of the
stream.

In the case of Attorney General v. Delaware & B. B. R. Co., 27 N. J., Eq., 631, the court, after quoting from 13 N. J. Eq., 46, says: "The practice thus mentioned shows that the Legislature has usually, when exercising its concurrent jurisdiction, under its interstate agreement, with the view of providing for the construction of bridges over this river, employed language that imported an authority to cross the river from shore to shore. And justly, too; for though its authorization was not alone sufficient, as it has not exclusive jurisdiction, yet, as it possessed jurisdiction of some sort over the whole of the waters, for the purpose of guarding the common highway, its permission was needed throughout by whomsoever claimed the right to interfere at all with this public privilege. Hence it is a perfectly proper use of language to speak of the railroads of New Jersey as crossing the Delaware under the sanction of her laws."

The Constitution of the State of Wisconsin (article 9, section 1), declares: "The State shall have concurrent jurisdiction on all rivers and lakes bordering on this State, so far as such rivers or lakes shall form a common boundary to the State, and any other State, or territory, now or hereafter to be formed, and bounded by the same."

This same provision is also found in the Constitution of Minnesota, and is also contained in the enabling acts authorizing the two States. The Legislature of Minnesota chartered the St. Croix Boom Corporation, and authorized it to erect booms in the river St. Croix. This was done on that part of the St. Croix river forming a part of the boundary line between the States of Wisconsin and Minnesota. There was no similar grant by the State of Wisconsin. In an action for damages, in which the boom corporation justified under its authority from Minnesota,

the Supreme Court of Wisconsin held, in a very elaborate opinion, that the State of Minnesota had power, under its concurrent jurisdiction clause, to grant the charter, at least as to its half the river. J. S. Keator Lumber Co. v. St. Croix Boom Corporation, 72 Wis., 62, [7 Am. St. R., 837, 38 N. W., 529].

Among other things, that court said, in discussing the opinion of the United States Supreme Court in the Wheeling & B. Bridge Co. Case, 18 How., 421, 15 L. Ed., 435: "It must be conceded, however, that the power and jurisdiction of Virginia over the half of the river most distant from it was greater than it otherwise would have been, by reason of the terms and conditions upon which it parted with its title to the territory northwest of the Ohio."

There are numerous cases where the question of concurrent jurisdiction, as applied to rivers forming a boundary line between States, has arisen, and in these cases it has been almost universally held that that provision in the several compacts and acts means legislative jurisdiction to control the river, and the free use thereof, for purposes of navigation. However, we are not without authority as to the jurisdiction of the States as regards civil and criminal jurisdiction of its courts over the rivers forming boundary lines.

The river Mississippi is the boundary line between the States of Iowa and Illinois, and, by an act of the Legislature of Iowa, the Mississippi & Missouri Railroad Company was authorized to erect a bridge on the river at Rock Island, and, by a like act of the State of Illinois, the Chicago & Rock Island Railroad Company was authorized to bridge the Mississippi river at Rock Island. Under the two legislative acts, a bridge was built,—one entire structure, consisting of six piers with a draw. There were three piers

on the Iowa side of the middle of the river, and likewise three piers on the Illinois side. One Ward, the owner of a line of steamboats running on that part of the river between St. Louis, Mo., and St. Paul, Minn., brought his action in the United States Court for the district of Iowa, seeking to have the bridge removed on the ground of a public nuisance, as an obstruction to the free navigation of the river. The case went to the Supreme Court, and was there decided. M. & M. Railroad Co. v. Ward, 2 Black, 485, 17 L. Ed., 311. The court said: "The Constitution of Illinois calls for the middle of the Mississippi river as the western boundary of that State, and, as Iowa was admitted into the Union after Illinois, a line in the middle of the river is the dividing line between the States. The complainant sued in the Federal Court because of his citizenship in a different State from the defendant; and the United States district court holden in Iowa could have exercised the same jurisdiction that a State court of Iowa could have exercised and no more. It had no power beyond the middle of the river. On that part of the bridge within Iowa and its piers the court below acted, and ordered that the structure should be removed. . . . It was at the long pier, and in the Illinois draw east of that pier, that the complainant's boats sustained the injuries on which he founds his right to sue the Iowa corporation, and to proceed against the bridge *in rem* as a public nuisance. An indictment could only have been prosecuted against the owner for keeping up the nuisance in Illinois in the courts of Illinois, because the nuisance was a trespass and crime against the laws of Illinois, and the injuries to the complainant's boats, giving him the privilege to sue and abate the obstruction, was as local as the public right to indict. He asks nothing from the person of the defendant, but seeks

[ 21 ]

to remove a local object, because he has sustained special damage from that object. The district court had no power over the local object inflicting the injury, nor any jurisdiction to inquire of the facts, whether damage had been sustained, or how much. These facts are beyond the court's jurisdiction and powers of inquiry, and outside the case."

This position taken by the court as to jurisdiction is emphasized by a dissenting opinion of Mr. Justice Nelson, concurred in by Justices Wayne and Clifford. The dissenting opinion does not claim jurisdiction for the court of Iowa upon any concurrent idea, but, as said, "upon much higher and broader ground. The right to a free and unobstructed navigation of this river on the part of the public, and especially of the citizens of the United States, depends upon the Constitution and the laws of the United States,—the public law of the country." Mr. Justice Nelson's dissent (2 Black, 497, 17 L. Ed., 316).

The enabling act of the State of Illinois, (3 Stat., 429, section 2), says: "Provided, also, that the said State shall have concurrent jurisdiction with the State of Indiana on the Wabash river, so far as said river shall form a common boundary to both, and also concurrent jurisdiction on the Mississippi river, with any State or States to be formed west thereof, so far as said river shall form a common boundary to both."

The enabling act of Iowa provides (5 Stat., 743, section 3): "And be it further enacted, that the said State of Iowa shall have concurrent jurisdiction on the river Mississippi, and every other river bordering on the said State of Iowa, so far as the said rivers shall form a common boundary to said State and any other State or States now or

hereafter to be formed or bounded by the same; such rivers to be common to both."

Thus it is clear that, by the very highest authority, the States of Iowa and Illinois were given concurrent jurisdiction over the river Mississippi; yet, by the decision of the Supreme Court, it was held that the courts of Iowa could not exercise jurisdiction beyond the middle of the river,—its boundary.

It is noticeable that, in the enabling act of Illinois, that State is guaranteed concurrent jurisdiction over the rivers Mississippi and Wabash; yet as to the river Ohio, forming a part of its boundary, the same as that river forms a part of the boundary of Indiana,—low water mark on the northern shore,—there is no mention of concurrent or other jurisdiction.

In the enabling act of Indiana (3 Stat., 289, section 2), it reads: "Provided, also, that the said State shall have concurrent jurisdiction on the river Wabash with the State to be formed west thereof, so far as the said river shall form a common boundary to both." The only authority under which Indiana can claim concurrent jurisdiction over the river Ohio, is by reason of the compact with Virginia. That part of the compact relating to the river Ohio and jurisdiction thereon is section 11, *supra*.

The concurrent jurisdiction therein guaranteed to the States owning the northwestern shores of the river Ohio has always been considered by the State of Illinois to be legislative only, and that State has never, so far as we are informed, assumed to its courts jurisdiction beyond its territorial limits. The rights of the State of Illinois must be the same as of the State of Indiana.

We are of opinion, clearly, that concurrent jurisdiction, as granted by the compact with Virginia, meant only that

the States should have legislative jurisdiction. This was done, as it seems to us, to insure to each State, and to the citizens of the United States the free and unobstructed navigation of that river. In other words, concurrent jurisdiction was given and retained, so that neither State, against the wish of the other, or without the consent of the other, could authorize the construction of a bridge across the river, and so that each State could grant ferry privileges and wharfing privileges, and regulate fishing therein, and such other rights common to both, and necessary to be under a common supervision of both, to make the waters of the river Ohio a common, public, free and unobstructed highway for purposes of navigation. It is a universal rule that the jurisdiction of all States is limited by their territorial boundaries. To make an exception to this rule requires an express stipulation. It is against all rules and precedent of law to grant to another State jurisdiction over the territory of a State, and, if it be conceded that it can be done, it will never be by implication. If any grant be made, it should always be held to be the least power that the words of the grant covers.

We realize that the courts of Indiana claim concurrent jurisdiction over the river Ohio, and that our opinion here is in conflict with that of the Supreme Court of Indiana; but we prefer to follow the opinion of the Supreme Court of the United States in this matter, especially when it agrees with our ideas on the subject. Louisville Bridge Co. v. City of Louisville, 81 Ky., 189.

The Constitution of Indiana, under which this concurrent jurisdiction is claimed, only gives or declares jurisdiction on the Ohio "so far as said rivers [Ohio and Wabash] form the common boundary between this State and said States respectively." The Wabash river forms

Meyler v. Wedding, &c.

the common boundary between the States of Indiana and Illinois, and, by the enabling acts of both States, concurrent jurisdiction is given over the Wabash. The Ohio river is not the common boundary between the State of Indiana and this State. The boundary line is low-water mark on the northwest, or Indiana side. Indiana v. Kentucky, 136 United States, 479, [10 Supreme Court, 1051, 34 L. Ed., 329]. So that, if the letter of the Constitution of Indiana be looked to alone, it does not declare that the courts of that State have jurisdiction, except on rivers forming the common boundaries thereof, which can not and does not include the river Ohio. We are therefore of opinion that the Superior Court of the county of Vanderburg, Indiana, did not acquire jurisdiction of the person of appellant by the service of summons on him while on the river and on this side of low-water mark, and by the verdict of the jury this was all the service ever had on appellant. The judgment sued on is therefore void, and judgment upon the verdict should have been rendered for appellant.

For the reasons indicated, the judgment is reversed and cause remanded, with directions to render judgment on the verdict dismissing the action, and for proceedings consistent herewith.

The whole court sitting.

A separate concurring opinion was subsequently delivered by JUDGE DURELLE; and a dissenting opinion by JUDGE HOBSON, in which JUDGE BURNAM concurred. These opinions may be found at the end of this volume.