Argued March 17, decided May 12, 1908.

## STATE *v.* NIELSEN.

[95 Pac. 720.]

SAME—STATES—BOUNDARIES—RIVERS—"CONCURRENT JURISDICTION."

1. Under Act Congress March 2, 1853, c. 90, 10 Stat. 172, providing that the territories of Oregon and Washington shall have "concurrent jurisdiction" over offenses committed on the Columbia River where it forms the common boundary, and Act Congress Feb. 14, 1859, c. 33, 11 Stat. 383, admitting Oregon into the Union, providing that the State of Oregon shall have "concurrent jurisdiction" on the Columbia River so far as the same shall form a common boundary of the State, the law of Oregon prohibiting fishing with a purse net on the Columbia River extends over the entire river where it forms a boundary of the State, though the law of Washington permits fishing by such means by one obtaining a license so to do, since the rule is that where adjoining states have concurrent jurisdiction on the waters forming their boundaries, the law of each state regulating the common right to take fish from such waters are valid when not in conflict, and where there is a conflict, the law of the state which is most restrictive in its character must prevail.

FISH—NATURE OF PROPERTY.

2. Fish being *feræ naturæ* while in state of nature, may of common right be captured and taken from navigable waters by anyone unless forbidden by law.

SAME—POWER TO REGULATE.

3. The sovereignty having jurisdiction over navigable waters, may under its police power, regulate or restrict the right of fishing therein.

SAME.

4. Since a license to fish in the Columbia River issued by the state of Washington does not confer on the licensee the right to fish, and since the issuance of the license is a mere regulation of an existing right, the enforcement of the law of Oregon prohibiting fishing in the Columbia River, does not deprive the licensee of a right granted to him by the state of Washington, but the law of Oregon is an additional restriction of a common right.

From Clatsop: THOMAS A. MCBRIDE, Judge.

The defendant, Christ Nielsen, a resident of the State of Washington, was arrested, tried, and convicted in the courts of Oregon for illegal fishing on the Washington side of the Columbia River, in violation of the laws of this State, and from the judgment rendered therein, he appeals.                                        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. George C. Fulton.*

For respondent there was a brief over the names of *Andrew M. Crawford,* Attorney General, *Isaac H. Van Winkle,* Assistant Attorney General, and *Gilbert L. Hedges,* District Attorney, with an oral argument by *Mr. Crawford.*

For the State of Washington, *amicus curiae,* there was a brief over the names of *John D. Atkinson,* Attorney General, and *A. J. Falknor,* Assistant Attorney General.

Opinion by MR. CHIEF JUSTICE BEAN.

The defendant, a resident of the State of Washington, was tried and convicted in the courts of this State for fishing on the Washington side of the Columbia River, with a purse net—a floating device for taking fish—in violation of the laws of this State, and he appeals. By the law of the State of Washington, in force at the time of his arrest, fishing with a purse net was lawful by

those having a license so to do from the fish commissioner of that state, and defendant had such license. The single question for determination, therefore, is whether the law of Oregon prohibiting the taking of fish, in the manner indicated, extends over the entire waters of the river, or whether it is confined to the Oregon side. By Section 1 of the act of congress of March 2, 1853, c. 90, 10 Stat. 172, all that part of the territory of Oregon lying north of the "main channel of the Columbia River" was organized into the Territory of Washington, and by Section 21 of the same act it is provided "that the Territory of Oregon, and the Territory of Washington, shall have concurrent jurisdiction over all offenses committed on the Columbia River, where said river forms the common boundary between said territories." Section 1 of the act of congress admitting Oregon into the Union (Act Feb. 14, 1859, c. 33, 11 Stat. 383), after describing in detail the boundaries of the state, provides, "including jurisdiction in civil and criminal cases upon the Columbia River and Snake River, concurrently with the states and territories of which those rivers form a boundary in common with this State." And in Section 2 it is said, "the State of Oregon shall have concurrent jurisdiction on the Columbia and all other rivers and waters bordering on the said State of Oregon, so far as the same shall form a common boundary to said State, and any other state or states now or hereafter to be formed or bounded by the same."

1. The meaning of the words "concurrent jurisdiction," as used in these several acts of congress, is the point at issue in the present case. It has been a subject of dispute between the two states for many years, and is a question of great public importance to both commonwealths, and one which should be authoritatively settled by the Supreme Court of the United States, as the court of final resort. In 1895, one Mattson was tried and convicted in the Circuit Court of Clatsop County for fishing in the river on Sunday, in violation of the laws of this

State. Mattson petitioned the Circuit Court of the United States for a writ of *habeas corpus* and, upon a hearing before Judges BELLINGER and HANFORD, was discharged, the court ruling that the law of Oregon, under which he was tried and convicted, was invalid, because it had not been acquiesced in, or sanctioned, by the State of Washington. In construing the word "concurrent," as used in the acts of congress conferring jurisdiction on the river, it is said, "the word 'concurrent' in its legal and generally accepted definition, means acting in conjunction, and when applied to jurisdiction of Oregon to enact laws for the Columbia River, it can only mean the power to enact such criminal statutes as are agreed to or acquiesced in by the State of Washington, or as are already in force within its jurisdiction": *In re Mattson* (C. C.), 69 Fed. 535. This ruling was subsequently followed by Judge WOLVERTON in *Ex parte Desjeiro* (C. C.), 152 Fed. 1004. By this construction, concurrent jurisdiction is made to mean the same as joint jurisdiction, consequently neither state can make or enforce any of its laws—civil or criminal—on the river, without the consent of the other, thus denying to each state a jurisdiction expressly conferred upon it by congress. The question of concurrent jurisdiction over boundary waters has frequently been considered by the courts of this country, and, while no satisfactory definition of the term is to be found in the books, no court, except the one referred to, has, so far as we have been able to ascertain, ever held or intimated that where the waters of a river or stream form the boundary between two states, and each is given concurrent jurisdiction on the same, that neither can enforce its laws unless they have been acquiesced in or approved by the other.

The northern boundary of the states of West Virginia and Kentucky extends to low-water line on the north side of the Ohio River, and the southern boundary of Illinois, Indiana, and Ohio to that point. The middle

channel of the Mississippi River is a boundary between the states of Missouri, Iowa, and Minnesota, on one side, and Illinois and Wisconsin on the other; and the middle channel of the Missouri River is the boundary between Missouri and Kansas. Each of these states is given concurrent jurisdiction over the river forming the boundary thereof. The right of such states to execute process emanating from its courts and enforce its civil and criminal laws on the waters of the stream has been repeatedly declared, and is denied by no court of last resort, except in *Meyler* v. *Wedding*, 107 Ky. 310 (53 S. W. 809: 92 Am. St. Rep. 347), which was subsequently reversed by the Supreme Court of the United States, 192 U. S. 573 (24 Sup. Ct. 322: 48 L. Ed. 570: 66 L. R. A. 833), and *Roberts* v. *Fullerton*, 117 Wis. 222 (93 N. W. 1111: 65 L. R. A. 953), which will be referred to hereafter. Thus, in *State* v. *Plants*, 25 W. Va. 119 (52 Am. Rep. 211), a conviction in a West Virginia court for selling spirituous liquor on a boat, which was afloat on the Ohio River above low-water mark on the Ohio side, in violation of the laws of West Virginia, was sustained. In *Welsh* v. *State*, 126 Ind. 71 (25 N. E. 883: 9 L. R. A. 664), it was held that one who sold intoxicating liquors in a boat anchored in the Ohio River south of low-water mark could be charged, tried, and convicted in an Indiana court for violating the laws of that state, the court saying, "that the criminal laws of the state extend to and are in force on the Ohio River where such river constitutes the south boundary of the state." In *Carlisle* v. *The State*, 32 Ind. 55, it was held that an Indiana court had jurisdiction over the crime of murder committed on the Ohio River, and in *State* v. *George*, 60 Minn. 503 (63 N. W. 100), that a court of that state had jurisdiction to punish the crime of larceny committed on the Wisconsin side of the Mississippi River. In *Loy* v. *Steamboat F. X. Aubury*, 28 Ill. 412 (81 Am. Dec. 292), the court held that trespass would lie for assault committed on a passenger by the officer of

a boat on the Ohio River. A conviction for keeping a house of ill-fame on the Illinois side of the Mississippi River was sustained by the courts of Iowa (*State of Iowa* v. *Mullen,* 35 Iowa, 199), and so was a conviction for keeping a gaming house on the Missouri River by the court of that state, although the house or boat in which the gaming was conducted was on the Kansas side: *State* v. *Metcalf,* 65 Mo. App. 681. In *Sanders* v. *St. Louis & N. O. Anchor Line,* 97 Mo. 26 (10 S. W. 595: 3 L. R. A. 390), it was ruled that an act of the State of Missouri, giving damages for negligence resulting in death, controlled in a case arising from acts occurring on the Illinois side of the Mississippi River, and the same doctrine has been enforced in the courts of Indiana: *Sherlock* v. *Alling, Adm'r,* 44 Ind. 184; *The Memphis & Cincinnati Packet Co.* v. *Pikey, Adm'x,* 142 Ind. 304 (40 N. E. 527). The Circuit Court of the United States for the District of Oregon, in *Annie M. Smull,* 2 Sawy. 226, held that it had jurisdiction over a boat anchored on the Washington side of the Columbia River. Judge DEADY, in stating the terms and effect of the act of congress conferring on this State concurrent jurisdiction on the Columbia River, says:

"It is not merely a special grant of judicial power to the courts of the State over persons and things upon the river, but within the boundary of the State. It is a legislative declaration or enactment that the jurisdiction of the State—that is, its whole sovereign power shall extend to the whole river, subject to the qualification that the jurisdiction of the state or territory on its northern shore, shall in like manner extend to its southern shore. In effect, this makes the northern shore of the river the northern boundary of the State, for its territorial limits and jurisdiction are necessarily the same. Practically, then, so far as the Columbia River forms a boundary common to Oregon and Washington, it is within the territorial limits and jurisdiction of each."

The right to exercise concurrent jurisdiction over rivers forming state boundaries will be found discussed

by Mr. Rorer in his work on Interstate Law, 336 *et seq.,* and in notes to *Roberts* v. *Fullerton,* 117 Wis. 222 (93 N. W. 1111: 65 L. R. A. 953). And, as we have already remarked, in no instance has the suggestion been made that the validity of the law sought to be enforced was dependent upon the acquiescence or concurrence of the adjoining state, unless it was concerning some matter affecting or annexed to the soil, but, on the contrary, in *Keator Lbr. Co.* v. *The St. Croix Boom Corp.* 72 Wis. 62 (38 N. W. 529: 7 Am. St. Rep. 837), it is expressly declared that concurrent jurisdiction is not joint in the sense that only legislative acts adopted by both states can be effective on boundary waters.

2. The case of *Roberts* v. *Fullerton,* 117 Wis. 222 (93 N. W. 1111: 65 L. R. A. 953), is much relied upon by defendant. That was an action to recover damages for the taking of plaintiff's fish net from where it was located, to catch fish on the Wisconsin side of the Mississippi River. Defendant pleaded in justification that he was an officer of the State of Minnesota duly authorized to enforce its law for preservation of fish, and, in doing the act complained of, was in the performance of his official duties. The court held that, although the states of Wisconsin and Minnesota had concurrent jurisdiction over the water in question, an attempt is made in the majority opinion to distinguish between laws regulating the right to fish and other acts of a criminal and civil nature. But, like Mr. Justice DODGE, who dissented in that case, we are "unable to distinguish between criminal and police legislation of the state addressed to the subject of catching or destroying fish, and police or criminal legislation relating to other subjects." Fish, being *ferae naturae,* while in state of nature, may of common right be captured and taken from navigable waters by any one, unless forbidden by the law-giving power: 2 Farnham, Water & Water Rights, 1361.

3. But because an indiscriminate exercise of this common right would speedily result in the destruction of the

fish, the sovereignty having jurisdiction over the waters under its police powers may regulate or restrict the exercise of this right for the common good: *State* v. *Schuman*, 36 Or. 16 (58 Pac. 661: 47 L. R. A. 153: 78 Am. St. Rep. 754) ; *Haggerty* v. *Ice Mfg. & Storage Co.* 143 Mo. 238 (44 S. W. 1114: 40 L. R. A. 151: 65 Am. St. Rep. 647) ; *Smith* v. *State,* 155 Ind. 611 (58 N. E. 1044: 51 L. R. A. 404). And in our opinion, where adjoining states have concurrent jurisdiction on the waters forming their boundaries, the laws of each state regulating the common right to take fish from such waters are valid and binding, when not in conflict, and, if there is a conflict, the law of that state, which is the most restrictive in its character, must prevail, and to that extent the state, which first assumes, has jurisdiction to the exclusion of the other. If this is not so, and the states of Oregon and Washington must join in regulations to protect the fish industry on the Columbia River, a thing they have heretofore been unable to do, the river will practically become a common fishing ground, without limitation or restriction, and one of the greatest industries on the coast be speedily destroyed.

4. It is argued that Washington, by issuing a license to defendant to fish with a purse net, has made lawful that which the State of Oregon has declared to be an offense, and that a citizen of the former state who has complied with its law ought not to be punished for violating a law of this State. But the license did not confer upon defendant the right to fish. It was a mere regulation of an existing right, and hence the enforcement of a law of this State prohibiting fishing with certain appliances does not deprive defendant of a right granted to him by an adjoining state, but is an additional limitation and restriction on a common right, and one which, by reason of its jurisdiction over the river, we think it had the power to enact.                 AFFIRMED.