In re MATTSON.

(Circuit Court, D. Oregon. July 22, 1895.)

No. 2,229.

1. CONSTITUTIONAL LAW — ADMISSION OF STATES — CONCURRENT JURISDICTION OVER RIVER.

The assumption by the state of Oregon, in its constitution, of concurrent jurisdiction on the Columbia river, and the provision, in the act of congress admitting the state into the Union, expressly confirming such jurisdiction, are effective to establish it between Oregon and Washington, notwithstanding the failure of Washington, upon becoming a state, to assent thereto, and the omission of her enabling act to provide for it. The provision by congress for concurrent jurisdiction in such case, the common boundary of the two states being the middle channel of the river, is not a limitation upon the sovereignty of the states, nor the exercise of jurisdiction within them, nor an impairment of the equality of footing with the other states upon which they are entitled to admission into the Union.

2. SAME — "CONCURRENT" JURISDICTION DEFINED.

The word "concurrent," when applied to the jurisdiction of Oregon to enact penal laws for the Columbia river, can only mean the power to enact such criminal statutes as are agreed to or acquiesced in by the state of Washington, or as are already in force within its jurisdiction.

3. SAME — FISHING RIGHTS.

The states of Oregon and Washington own the bed of the Columbia river upon their respective sides to the middle channel, and the citizens of each within such boundary have a common right of fishing, so long as the navigation of the river is not obstructed. This right is not a mere privilege or immunity of citizenship, but a right of citizenship and property combined, which each state may make exclusive in its citizens, and which is not subject to control or regulation by the other, unless there is mutual agreement to that end.

This was a petition by Herman Mattson for a writ of habeas corpus.

C. W. Fulton, for petitioner.

James A. Haight, Asst. Atty. Gen., for the State of Washington.

C. M. Idleman, Atty. Gen., W. N. Barrett, Dist. Atty. for the Fifth Judicial District of Oregon, and J. H. Smith, for the State of Oregon.

Before HANFORD and BELLINGER, District Judges.

BELLINGER, District Judge. The petitioner is imprisoned upon a conviction, in the circuit court of the state of Oregon for Clatsop county, of Sunday fishing in the Columbia river, within the territorial limits of the state of Washington, in violation of the laws of Oregon This imprisonment is under the authority of the provisions contained in the constitution of Oregon and in the act of congress admitting the state into the Union, which provides, in effect, that the state of Oregon shall have concurrent jurisdiction on the Columbia and all other rivers and waters bordering on the said state of Oregon, so far as the same shall form a common boundary to said state or any other state or states now or hereafter to be formed or bounded by the same. The territorial boundary of the state on the north is the middle channel of the Columbia river. By the constitution of the state of Washington and the act of congress admitting that state into the Union, the south boundary of that state is fixed at the middle channel of the Columbia river. Neither act makes any provision for the exercise of jurisdiction concurrently with Oregon on such river It is claimed, among other things, in behalf of the petitioner, that the act of congress admitting Washington into the Union, passed subsequently to the Oregon enabling act, has the effect to repeal by implication so much of the earlier act as established concurrent jurisdiction upon the Columbia river. The assistant attorney general of the state of Washington appears in behalf of that state to contest the concurrent jurisdiction claimed by Oregon, and makes the further contention that upon the admission of the state of Washington into the Union that state became possessed of all the rights of dominion and sovereignty which belonged to the original states; that, while congress might limit her territorial boundaries, it was not within its power to withhold from her any of the rights of sovereignty possessed by the original states, within her territorial boundaries as fixed. It is argued, in support of this contention, that, while concurrent jurisdiction is uniformly established over all navigable rivers forming boundaries between states, this has been the result of compacts between the states, and that when Oregon was admitted into the Union it was with the knowledge on her part that congress was without authority to impose concurrent jurisdiction upon the future adjacent state, and that the provision therefor in her enabling act was subject to the agreement of the new state when admitted, which agreement Washington failed to make.

It is true that the concurrent jurisdiction over boundary rivers has always been assented to by the adjacent states. But in the beginning there were compacts between the original states, or be-

tween such states and the general government. The states of Kentucky, Ohio, Indiana, and Illinois were within the charter of Virginia at the commencement of the Revolution, and in the compact under which Kentucky became a state Virginia stipulated that the navigation of and jurisdiction over the Ohio river should be concurrent between the states which should possess the opposite shores. Handley's Lessee v. Anthony, 5 Wheat. 374. The sovereignty of Virginia entitled her to attach conditions to her grant. The compact was made for the new states, not with them, and the practice of a subsequent acquiescence of the new states is no doubt due to the fact that when new states were created out of the territory of older states, from which they were separated by navigable rivers, the territorial boundaries of such new states extended over no part of the river below low-water mark. The states out of which they were formed, upon a principle that obtains in such cases, retained the entire river within their domain. In such case, the assumption, by the new state having the right of concurrent jurisdiction secured to it, of some jurisdiction, exclusive or concurrent, was thought necessary to the existence of any jurisdiction on the river by such state. McFall v. Com., 2 Metc. (Ky.) 394. But this assumption of jurisdiction by one state is not necessary to the exercise of jurisdiction by the other. Concurrent jurisdiction between states separated by navigable rivers is an established rule in this government, although in some instances the entire river is within the territorial limits of one state; and in some cases jurisdiction is limited to the execution of the civil and criminal process of each state upon the adjacent waters within the exclusive jurisdiction of the other. 4 Stat. 708 (approving compact between New York and New Jersey). Concurrent jurisdiction is a practical necessity in the administration of government over such rivers. Its existence does not deprive a new state of the dominion and sovereignty belonging to the original states. The admission of Washington subject to the exercise of a concurrent jurisdiction with Oregon over the Columbia river does not place her upon an unequal footing with the other states. On the contrary, this is the footing on which the other states most favored in this respect are placed. It is immaterial that some of the original states made such condition of jurisdiction for themselves, and that others impressed it upon the territory ceded by them. The objection relates to the fact of equality, and not to the authority by which such equality is established.

It is conceded that congress could have made the north shore of the Columbia river the boundary of the new state, but it is claimed that, having fixed the boundary at the middle of the channel, congress was without power to authorize any other jurisdiction within such boundary. If congress might limit the boundary of Washington to the shore of the river without impairing the equality of rights of the state, how can an enlargement of the state's jurisdiction concurrently with Oregon over the entire river be construed to destroy such equality? The question is not to be decided upon a technicality. Whether, in legal effect, the boundary of each state is limited by its own shore,

or by the middle channel, with concurrent jurisdiction over the river in either case, the result is the same. To say that congress may establish a concurrent jurisdiction in the one case, but not in the other, is to perplex a grave question with a mere subtlety. When, in 1853, the territory of Washington was created out of the Oregon territory, congress established concurrent jurisdiction between the two territories on the Columbia river over all offenses committed on such river. Upon the admission of Oregon into the Union this jurisdiction was confirmed and made to include matters of a civil nature. The solemnity of a compact was given to this boundary and jurisdiction by the act admitting Oregon into the Union, which could not be abrogated nor altered by the subsequent admission of Washington. It secured to the new state of Oregon, as well as the future state of Washington, such equality of right as existed between all the states separated by navigable rivers, and as was necessary to the effective enforcement of the laws of each. This was a right to which the people of both jurisdictions had long been accustomed. It was such a right as the conqueror of a country would not, under the usage of nations, abrogate. Congress, in establishing concurrent jurisdiction between new states thus situated, does not impose upon their sovereignty nor exercise a jurisdiction within them. The authority which it thus exercises is nothing more than that of fixing the boundaries between new states. This authority is necessary to perfect equality of footing between them, since it is not otherwise practicable, in such cases, to precisely fix a jurisdictional boundary, unless it is placed at one shore, leaving the entire river within the territory and jurisdiction of one state, to the disadvantage of the other. The question, then, is presented: What is this concurrent jurisdiction, and is the procedure which has resulted in the petitioner's imprisonment a lawful exercise of it? The case of J. S. Keator Lumber Co. v. St Croix Boom Corp. (Wis.) 38 N. W. 529, is the case most relied upon in support of the contention that "concurrent jurisdiction" does not require concurrent action by the two states, but that either state can by itself legislate for the entire river which forms the boundary between them. The state of Minnesota authorized the construction of a boom in the St. Croix river, forming a boundary between that state and Wisconsin. The supreme court of Wisconsin held this to be a proper exercise of concurrent jurisdiction by the former state; "that each state may exercise independently such legislative control over the portion of said St. Croix river which is navigable and forms such boundary line as is consistent with the exercise of similar powers by the other state, and may, in aid of navigation, authorize to that extent the reasonable occupation of such stream, not amounting to a discontinuance thereof as a public highway between the states."

The independent legislative control which one state, in such a case, may exercise, consistent with the exercise of similar powers by the other state, is clearly shown in the cases cited in the opinion. A number of these cases involve the authority of one state to authorize the erection of wharves upon its shore and the collection of wharfage tolls thereat, and it is held that such authority is not in conflict with the authority conferred upon congress by the constitution to regulate

commerce, and is not a restriction upon the freedom of navigation of the rivers where such wharves are built. The question of concurrent jurisdiction between the states adjacent to such rivers was in no way involved in any of these cases. The case of Conway v. Taylor, 1 Black, 603, is of a different character. The state of Kentucky granted to one of its citizens, who was a riparian proprietor, a license for a ferry across the Ohio river, and it was held by the supreme court of the United States that the concurrent action of Kentucky and Ohio was not necessary to the validity of the license. The decision is upon the ground that "a ferry is in respect to the landing, not to the water"; that "the water may be to one and the ferry to another." The court held that the franchise in question was "confined to the transit from the shore of the state" granting the license, leaving it to the other state to regulate the same right on that side. This plainly shows that the concurrent action of both states was regarded as necessary to establish a line of transit across the river from shore to shore. The navigation of the river with ferryboats was the exercise of the paramount right of navigation. The ferry franchise, as stated, was not "in respect" to this, but to the landings, and, in order that the ferry should be available, concurrent action by both states was indispensable.

The supreme court of Wisconsin, in J. S. Keator Lumber Co. v. St. Croix Boom Corp., supra, also cites the case of Pennsylvania v. Wheeling & B. Bridge Co., 13 How. 578, and concludes that the decision of the supreme court was necessarily on the theory that the state of Virginia had power and jurisdiction to authorize a bridge across the Ohio river, provided it did so in a way not to intrude upon the power exclusively vested in congress by the commercial clause of the constitution; and in this connection the court says:

"It must be conceded, however, that the power and jurisdiction of Virginia over the half of the river most distant from it was greater than it would otherwise have been, by reason of the terms and conditions upon which it parted with its title to the territory northwest of the Ohio."

As to this, the fact is that the state of Virginia was the original proprietor of the territory on both sides of the Ohio river, and in the cession made by Virginia, in 1783, of the Northwest Territory, it retained the entire river within its boundaries. The question of concurrent jurisdiction was not considered in the case. The obnoxious bridge was between the Virginia and Ohio shores of the river. The state of Pennsylvania objected that her commerce on the river was injuriously affected by the structure, and the question was whether the bridge impaired the free navigation of the river. There was no objection to the bridge on the ground that Ohio had not concurred in the act authorizing it.

Upon the authority of these cases, the supreme court of Wisconsin holds that it is competent for Minnesota to authorize a boom in the St. Croix river in aid of navigation, when it is consistent with the reasonable continuance of a navigable channel as a public highway between the adjacent states. The court was not unanimous in the decision, and, while it may be questioned whether

it is sustained by the decided cases, it is not in conflict with the contention made for the petitioner in this case. On the contrary, the opinion defines "concurrent jurisdiction," as applied to the case before it, to mean the exercise of such legislative powers by each state over the whole river as were consistent with the exercise of similar powers over the same portions of the river by the other state; and the meaning of this is made clear by the statement in the opinion that "the result is that neither of these states could, as against the other, rightfully assume or authorize the assumption of permanent and exclusive occupancy, possession, and control of the entire navigable portions of the river."

The case of State v. Plants, 25 W. Va. 119, is cited for the state of Oregon. In that case the jurisdiction of West Virginia was upheld over the offense of selling spirituous liquors in a boat afloat below low-water mark on the Ohio river on the Ohio side, fastened to the bank by a rope. The decision is upon the ground that Virginia, in her deed of cession of the Northwest Territory to the United States in 1783, did not cede any part of the Ohio river, but retained in her own territory the whole of such river. The decision follows earlier decisions by that court holding that the state of West Virginia included within its territorial limits the whole of the river. There was conflict in the cases, and dissent between the judges as to whether this boundary extended to the line of ordinary low-water mark, but the court held that the jurisdiction thus retained extended over the waters of the river, no matter what the stage was, so long as it was confined within its banks. The question in the case was whether the offense charged was committed at a place within the exclusive jurisdiction of Ohio, by reason of the fact that the liquor was sold from a boat tied to the Ohio shore. There was no question as to whether the act charged was a crime under the laws of both jurisdictions, and therefore punishable by either, except as this was involved in the claim of exclusive jurisdiction made for Ohio.

In the case of Sherlock v. Alling, 44 Ind. 184, the court holds that the concurrent jurisdiction of Indiana over the Ohio river may be exercised independently in such manner as the state shall elect. The case was a civil action for damages to a passenger resulting from a collision of boats on the Ohio river. The opinion in this case does not authorize the conclusion that the state of Indiana may punish as criminal under its own laws that which is lawful under the laws of Kentucky. It is held that the general legislation of Indiana extends over the Ohio river, without any special reference thereto; that the failure of the legislature to specially include the territory over which its jurisdiction is concurrent shall not be considered as showing an intention to exclude it from the operation of its laws.

The case of Carlisle v. State, 32 Ind. 55, is cited. That case was an indictment for murder, and the crime was no doubt punishable under both jurisdictions. The question in the case arose out of the fact that Spencer county, in Indiana, where the defendant was tried, extended to low-water mark on the Ohio river, and the

crime was committed below low-water mark, opposite such county. The court held that Spencer county had concurrent jurisdiction with Kentucky over the river opposite its boundary.

In McFall v. Com., 2 Metc. (Ky.) 394, the defendant was indicted in Kentucky for solemnizing a marriage on the river in violation of the laws of Kentucky. The defense was that the laws of Ohio authorized the marriage. The sovereign power and jurisdiction of Kentucky was held to extend over the Ohio river to low-water mark on the Ohio side, upon the principle, already mentioned, that when a state, as was Virginia, to whose rights in that respect Kentucky succeeded, is the original proprietor, and grants territory on one side of a river only, it retains the river within its own domain, and the newly-erected state extends to the river only, and the low-water mark is the boundary. It was also held that while the compact with Virginia under which the Northwest Territory was ceded provided for concurrent jurisdiction over the river between the states adjacent to it on either side, yet the word "jurisdiction," as applied to a state, and as used in the compact with Virginia, imports nothing more than the power to govern by legislation, and that such power was inoperative without legislative enactments to enforce it, and the conclusion was reached that, inasmuch as there was nothing to show that Ohio had ever assumed or claimed or asserted jurisdiction, exclusive or concurrent, over the place where the offense was committed, such offense did not appear to have been committed within the jurisdiction of that state. This case, therefore, does not involve the question of the right of independent action by one state in the exercise of the concurrent jurisdiction. It merely decides that in that case the concurrent jurisdiction did not exist.

The case of President, etc., v. Trenton City Bridge Co., 13 N. J. Eq. 46, holds that concurrent jurisdiction requires concurrent action or concurrence of agreement. The case was this: By agreement between the states of Delaware and New Jersey, made and ratified in 1783, it is, among other things, provided, with reference to the Delaware river, "that each state shall enjoy and exercise a concurrent jurisdiction within and upon the waters, and not upon the dry land, between the shores of said river." The complainants were the proprietors of a bridge across the Delaware river, erected in pursuance of the authority of both states, and this franchise was made exclusive by the action of one of the states, not concurred in by the other. It was held that the power of erecting a bridge within the territories of both states, and of taking tolls thereon, could only be conferred by the concurrent action of both states, and that such right, once granted, could not be made exclusive by either state, at its pleasure, by its own legislation for its own advantage. It was plausibly argued by counsel in the case that, inasmuch as the concurrence of the two states was necessary to authorize a second bridge, one of such states might contract to grant no other charter,—might contract to do what, without contract, it might lawfully do, viz. refuse to grant any further franchise. But the court said the contract by New

Jersey not to grant to others involved the grant of a franchise to the complainants, and that such grant without the consent of Pennsylvania was invalid and inoperative.

In the case of State v. Mullen, 35 Iowa, 199, it is held that a person may be tried in the courts of Iowa for keeping a house of ill fame on a boat on the Mississippi river, although such boat, when so used, may, for a portion of the time, as the water recedes, rest on the soil of an island on the east side of the river, near the Illinois shore.

In the case under consideration, Oregon has established a weekly close season for the Columbia river, and has made fishing in the river during such season a crime; and it undertakes to punish a citizen of Washington for fishing in violation of this restriction in that part of the river within his own state, although by the laws of such state he is permitted to fish on the day interdicted by Oregon. It is no reason for this assumption of legislative control by Oregon within the boundaries of Washington that the latter state has the right to legislate similarly with reference to the river. Washington is precluded, by the legislation of Oregon over the river, from legislating otherwise. What is thus accorded to Washington is not a right, but the necessity of acquiescence to avoid a conflict of jurisdiction. How can this state, more than Washington, determine the right of the citizens of Washington to fish in the waters of that state, or prescribe the days for such fishing? Washington is wholly foreclosed in the premises by the action of Oregon in determining the question for both states. How can this be called the exercise of a concurrent jurisdiction? The word "concurrent," in its legal and generally accepted definition, means acting in conjunction, and when applied to the jurisdiction of Oregon to enact penal laws for the Columbia river it can only mean the power to enact such criminal statutes as are agreed to or acquiesced in by the state of Washington, or as are already in force within its jurisdiction. No comparison can be made between a case like this and cases where the concurrent jurisdiction has been invoked to punish acts that are crimes in themselves, or that are made so by the laws of both states having such jurisdiction. The two states own the bed of the Columbia river upon their respective sides to the middle channel, and the citizens of each within such boundary have a common right of fishing, so long as the navigation of the river is not obstructed. This right is held by the supreme court of the United States to be, not a mere privilege or immunity of citizenship, but a right of citizenship and property combined, which the state may make exclusive in its own citizens. McCready v. Virginia, 94 U. S. 391. It is clear, therefore, that this right in each state is not subject to control or regulation by the other, unless there is mutual agreement to that end. It can no more be brought within such control than can the enjoyment of property rights on the dry land.

It is ordered that the writ issue as prayed for.

HANFORD, District Judge, concurs.