HAMPTON v. COLUMBIA CANNING CO. et al.

(First Division. Juneau. September 26, 1906.)

No. 442.

1. FISH (§ 3*)—NAVIGABLE WATERS—TIDE LANDS.

Plaintiff claimed the exclusive right to erect and maintain a fish trap in the navigable waters of Lynn Canal, an arm of the sea, below the line of low water, but immediately in front of land which he had purchased from the government, by a location with soldiers' additional scrip. *Held*, that while the ownership of the abutting upland carries with it the right of access to deep water, and the consequent right to wharf out, it in no manner gives the owner or holder the right of fishing in tidal waters.

[Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 3, 6-8; Dec. Dig. § 3.*]

2. FISH (§§ 3, 8*)—TIDAL WATERS—REGULATION.

The right of fishing in tidal waters is a public right, common to all, and in which all are entitled to participate. Congress may enact laws for the regulation and control of the right of fisheries in the territories.

[Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 3, 6-8, 16; Dec. Dig. §§ 3, 8.*]

3. FISH (§ 3*)—TIDAL WATERS—FISHING RIGHTS.

The right of fishing in tidal waters at a particular spot is dependent upon, first, a priority of possession; and, second, upon the maintenance of that possession.

[Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 3, 6-8; Dec. Dig. § 3.*]

John R. Winn and E. H. McLachlen, for plaintiff.
Robert W. Jennings and T. A. Marquam, for defendants.

GUNNISON, District Judge. This is a suit in equity arising over a fish trap location upon the north shore of Lynn

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

Canal, near Point St. Mary, in which the plaintiff seeks injunctive relief against defendants. The facts are sufficiently stated in the discussion of the case.

The plaintiff relies upon two grounds, viz.: First, that he is the locator and claimant, under the soldiers' additional homestead act, of the upland in front of which he commenced his fish trap; and, second, that he is the prior locator of the trap site, and was in the actual possession and occupancy of the site at the time defendants arrived and committed the acts of which he complains.

Upon the first proposition, both plaintiff and defendants adduced much evidence, and argued at great length; defendants' position being that plaintiff's upland location overlapped the mining claim of one Jarmey, who is not a party to the suit. While the ownership of the abutting upland carries with it the right of access to deep water and the consequent right to wharf out (Yates v. Milwaukee, 10 Wall. 497, 19 L. Ed. 984; Lewis v. Johnson [D. C.] 76 Fed. 477), it in no manner gives the owner or holder the right of fishery in tidal waters. The case of Sutter v. Heckman, 1 Alaska, 81, affirmed in 119 Fed. 83, 55 C. C. A. 635, and 128 Fed. 393, 63 C. C. A. 135, which plaintiff cites, does not sustain his contention. The latter decision is based upon the act of 1884 (23 Stat. 24) and the peculiar facts of that case. The court declares the right of fishery to be a right of property as well as a right incident to citizenship (see, also, McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248; also In re Mattson [C. C.] 69 Fed. 542), and then says:

"When this right, as in the case at bar, involves the clearing and use of a small portion of tide lands, there seems nothing even unjust in protecting such possession against the invasion of a rival in business, nor does such temporary concession of such right of occupancy in any way involve a concession of any title to such tide lands, or any permanent right of possession."

The evidence in the case at bar establishes that plaintiff's trap site is below the line of low tide, and is not therefore upon tide land. Nor would he be in any better position, under those decisions, were it a fact that his trap site was wholly upon the tide land. The decisions above cited go no further than the facts of the particular case in which they are rendered. The court specially disclaims any intention to hold that the plaintiff in that case, even though he was protected in his right to use the tide flats as a place on which to draw his nets, acquired any title or permanent right of possession. In fact, the decisions pass upon the right of plaintiff to use the tide flats as a place upon which to draw his nets, but do not pass upon the right of fishery, which is very different. Counsel has called to the attention of the court no case which holds that the right of fishery in tidal waters is dependent upon the ownership of the abutting upland. On the contrary, all cases upon that subject which the court has been able to examine hold that the right is not incident to such upland ownership. In the case of the Pacific Steam Whaling Co. v. Alaska Packers' Association, 138 Cal. 632, 72 Pac. 162, it was held that the right of fishery in the ocean is a public right, common to all, whether in the open sea or upon the tide land. See, also, note, 14 L. R. A. 386. Slingerland v. International Contract Co., 169 N. Y. 60, 61 N. E. 995, 56 L. R. A. 495, while not directly in point, bears toward the same rule. Hence, if the question as to the ownership of the upland were properly before the court, it is not determinative of the case at bar.

It is clear, therefore, that if the plaintiff can succeed at all, it must be upon the second ground; i. e., by virtue of priority of location and maintenance of possession. Courts are, or should be, loath to interfere, by injunction, with rights of persons or property, unless some legal or equitable right of one of the parties, which is clear, is or is about to

be invaded. Beach on Modern Equity Jurisprudence (2d Ed.) § 652. Defendants urge that:

"It is not for the court to say that, because somebody is doing something which it thinks not quite right, a thing which ought not to be done by one person to another, it should interfere." Id. § 642.

There can be no doubt but that such is the law. Plaintiff must therefore clearly establish his right, either legal or equitable, to the relief which he seeks, before the court may be warranted in interfering.

The evidence upon the question of the location of the trap site discloses the facts to be that in the fall of 1904, the defendant Leonard went to the spot in controversy and on the beach, opposite the place, posted a notice of the location of a fish trap site. In addition to the notice, he caused to be set near the line of low tide three piles, which were at the time cut from the timber above the beach. These three piles or pieces of timber were, however, set so insecurely that they did not long withstand the action of the tide. After setting these piles, Leonard left the place without doing more. The next persons to visit the spot were the representatives of the plaintiff, who went there in the following spring. At the time of their arrival, nothing remained of Leonard's piles, or notice, to advise them of his prior attempt to locate a fish trap site. While Keating, a surveyor, and one of the plaintiff's representatives, was running lines on the shore, the crew of the pile driver, which had been brought, together with a tow of piles, set about driving a trap. Eight piles in a line and a dolphin consisting of three piles were driven in deep water. The available piles having been all used, a watchman was left on the beach, and the remainder of the men with the apparatus left the place for the purpose of getting more piles. A short time after they left, the defendant Leonard appeared with a pile driver, a crew therefor and a tow of piles. They at once set about driving a trap. Leonard went

ashore, where he was met by the watchman and warned that that was the plaintiff's location.   Defendant paid no attention to the warning, and his men continued their work in such a way that one of plaintiff's piles was made a part of the defendants' trap, and plaintiff's work was rendered useless.

Defendants' contention is that defendant Leonard was the prior locator, having made his prior location in the preceding fall, and that therefore plaintiff had no right to build his trap there.

We are here confronted with the question as to how a fish trap site is to be located, and what are one's subsequent rights. Since the acceptance of the Magna Charta by King John, it has been the law in England that the right of fishery in tidal waters is a public right, common to all, and in which all are entitled to participate.   2 Farnham on Waters and Water Rights, § 368.   This became the law of the United States when their independence was accomplished.   The federal government held the right of fishery, as it did the title to tide lands, in trust for the future state.   Gould on Waters, 32.   In the several states, the people by their representatives in the Legislatures may by statute provide regulations for the exercise of the right and may even make private grants. McCready v. Virginia, 94 U. S. 391-397, 24 L. Ed. 248; In re Mattson (C. C.) 69 Fed. 542.   But in the administration of its trusteeship, the federal government, through Congress, may enact laws for the regulation and control of the right of fisheries in the territories.   It has done so in some instances in Alaska.   There are, however, no statutory regulations governing the location of fish traps and the sites therefor in Alaska.

We have seen that the right of fishery in tidal waters is a public right, common to all.   It cannot, therefore, be exclusive in any individual, and hence cannot be such a right

as may be obtained by prescription. Pacific Steam Whaling Co. v. Alaska Packers' Association, supra. See, also, notes, 14 L. R. A. 386, and 42 L. R. A. 311. But, while the right of fishery in tidal waters cannot be exclusive, every characteristic of the right of fishery, which is defined by a learned text-writer as "a right to employ within a particular stretch of water lawful means for the taking of the fish which may be found there" (2 Farnham on Waters and Water Rights, 371), as well as the characteristics of the fish, renders impossible in many instances, as in the case at bar, the exercise of the right by two individuals at a particular spot at one and the same time. In some states, provision for such a contingency has been made by statute. Not so here, however. Experience long ago taught the impossibility of two persons simultaneously exercising the right at the identical spot, and it has long been the rule, framed at the dictate of natural reason, equity and justice, that the right of fishery in tidal waters at a particular spot is dependant upon: First, a priority of possession; and, second, upon the maintenance of that possession.

"No person can acquire a right of fishery superior to any other unless he has gone into the common waters and set up and established his pounds and stakes, and taken possession of the line which those pounds and stakes include. With these a stranger cannot interfere." 2 Farnham on Waters and Water Rights, § 394.

But the defendants urge that eight piles and a dolphin do not make a fish trap, nor do they constitute pounds and stakes. That is undoubtedly true, but every man is entitled to a reasonable time in which to complete his fish trap, where he exhibits diligence and good faith. Of these essentials the acts of plaintiff bear every evidence. Before he had a reasonable time to complete his work, defendant appeared, and by his acts rendered plaintiff's labor useless. Clearly defendant may not stand upon his attempted location of the trap site in

the fall of 1904.. What he did at that time was ephemeral and did not even stand to give notice of his intention; nor was it sufficient as a basis upon which to hold the site, for:

"Where labor is necessary to fit a certain place for profitable fishing, the one bestowing that labor is entitled to protection in its enjoyment as long as he continues in possession and occupation." 2 Farnham on Waters and Water Rights, § 394.

When plaintiff's representatives came to the spot, they found nothing to warn them of a prior appropriation. Thereupon they took possession, and were maintaining possession when the defendant appeared. Plaintiff has established a clear right to the protection of the court, and the relief sought should be granted, since he has no other adequate remedy.

Defendants' motion to dismiss should be overruled.