Argued March 2, affirmed March 23, 1915.

## STATE v. CATHOLIC.

### (147 Pac. 372.)

**Constitutional Law—Fish—Class Legislation—Regulation.**

1. Sections 5293, 5298, L. O. L., regulating fishing for salmon, sturgeon, or other anadromous fish in the waters of the state, is not class legislation within the prohibition of Article I, Section 20, of the Constitution, providing "no law shall be passed granting to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens," since the statute protects the right of all persons possessing the requisite qualifications who pursue the salmon fishery under similar circumstances and conditions.

[As to equal protection of laws, see note in 25 Am. St. Rep. 873.]

**Constitutional Law—Privileges of Citizens of United States—Fishing Regulation—Constitutionality.**

2. Section 5298, L. O. L., regulating fishing for salmon, etc., in the waters of the state, is not in violation of Const., U. S. Amend. 14, providing that no state shall make a law to abridge the privileges and immunities of citizens of the United States, since a business, to be protected from interference by state legislation under such amendment, must be a calling which any person can pursue anywhere in the United States as of common right, while the qualified ownership of roving fish in navigable waters within the state is in that sovereignty in trust for its citizens alone.

**Fish—Right of Fishery—Salmon Fishery in Columbia River—Concurrent Jurisdiction of Oregon and Washington.**

3. Where defendant was convicted of fishing for salmon in the Columbia River without a license, under Section 5298, L. O. L., denouncing such an offense committed in any of the waters of the state, and where the statutory provisions of the State of Washington, on the same point, in the exercise of its concurrent jurisdiction with Oregon over the Columbia River, contain practically the same provisions, the emphasis being upon the fact of fishing without a license,

conviction here was proper under the federal rule that, in cases of concurrent jurisdiction, the statutory provisions of the two states must be practically identical to have a conviction in either.

**Fish—Fishing Without License—Guilt of Unlicensed Employee of Licensed Employer.**

4. Where defendant, convicted under Section 5293, L. O. L., regulating fishing for salmon, etc., in the waters of the state, of fishing for salmon in the Columbia River without a license, and though without a license himself, was employed by one duly licensed, he was properly convicted.

**Criminal Law—Conviction of Separate Misdemeanors—Constitutional Offense.**

5. Where defendant was convicted, under Sections 5293, 5298, L. O. L., regulating fishing in the waters of the state, of two offenses, first, in having fished without a license, and second, as having fished without being a resident of the state, and where the punishment in each case was the same, although the defendant should have been convicted under the charge of fishing without a license alone, his conviction could be upheld under Article VII, Section 3, of the Constitution, as amended, providing that if the Supreme Court shall be of opinion that the judgment of the court appealed from was such as should have been rendered, it shall be affirmed, notwithstanding any error committed during the trial.

From Clatsop: JAMES A. EAKIN Judge.

In Banc.    Statement by MR. CHIEF JUSTICE MOORE.

Two informations were filed in a justice's court of Clatsop County, Oregon, the charging part of one being as follows:

"Orazio Catholic is accused by this complaint of the crime of fishing for salmon, being a nonresident at said time, committed as follows: The said Orazio Catholic, on the 1st day of July A. D. 1914, in the county of Clatsop and State of Oregon, then and there being, did then and there willfully and unlawfully fish for and take and catch salmon fish, with a gill net, in the waters of the Columbia River, in said Clatsop County, State of Oregon, he, the said defendant, Orazio Catholic, not being or having been a *bona fide* resident of the State of Oregon, or the States of Washington or Idaho for the period of six months, but he, the said Orazio Catholic, being then and there a citizen and *bona fide* resident and inhabitant of the State of California, contrary to the statute in such cases made and provided,

and against the peace and dignity of the State of Oregon."

The other information, omitting the title of the court and cause, the signature of the prosecuting officer and the verification, reads:

"Orazio Catholic is accused by this complaint of the crime of fishing without a license, committed as follows: The said Orazio Catholic, on the 10th day of July, 1914, in the county of Clatsop and State of Oregon, then and there being, did then and there take and fish for salmon fish and sturgeon in the waters of the Columbia River, in the said County of Clatsop and State of Oregon, with a gill net, without first having obtained a license therefor, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Oregon."

Pleas of not guilty having been interposed, the causes were tried upon agreed statements of facts. The detailed specification thereof as to the charge first hereinbefore set forth is, in substance, as follows: That at all the times stated therein the defendant was and now is a citizen of the United States and a *bona fide* resident and inhabitant of the State of California, and not a citizen of Oregon, Washington or Idaho; that he was and is by occupation a fisherman, and on May 1, 1914, came to Oregon to embark in that business on the Columbia River; and that on July 1, 1914, he engaged in fishing for salmon in that stream in Clatsop County, Oregon, with a gill net and caught such fish therewith.

In respect to the second charge the stipulation is to the effect that W. E. Tallant is, and all the times stated therein was, a citizen of the United States and of the State of Oregon, and had been a *bona fide* resident thereof for more than 10 years; that on May 1, 1914, he duly obtained a license authorizing him to operate a

75 Or.—24

gill net and to engage in fishing for salmon in the Columbia River until March 31, 1915; that he was the owner of a gill net and a fishing boat, and had complied with all the requirements of law necessary to enable him by such means to take and catch salmon; that on July 10, 1914, he employed the defendant to operate such boat and net, and the latter then took entire possession thereof, and therewith engaged in catching salmon in the Columbia River within Clatsop County, Oregon, which fish when so taken were delivered to Tallant; that at all the times the defendant had charge of such boat he had no license to operate a gill net on the Columbia River; and that he managed such boat and net as the employee of Tallant.

Based on such agreed statements of facts, the defendant was convicted on both charges, and from the judgments so rendered he appealed to the Circuit Court of the State of Oregon for Clatsop County, where the causes were tried, without a jury, upon the same statements of facts which the court adopted as its findings, and, predicated thereon, the defendant was again adjudged to be guilty as charged in each case. From these latter judgments he appeals to this court.

                                        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. George C. Fulton.*

For the State there was a brief over the names of *Mr. C. W. Mullins,* District Attorney, and *Mr. Andrew M. Crawford,* Attorney General, with an oral argument by *Mr. Mullins.*

Opinion by MR. CHIEF JUSTICE MOORE.

The printed abstract, referring to the trial in the Circuit Court and to the agreed statements of facts,

contains the following recital: "That there was no
other testimony or evidence offered or received by
either party." A stipulation was filed with our clerk,
to the effect that each party might offer in evidence
in this court such laws of the State of Washington as
might be desired, which enactments should be consid-
ered in the same manner as if they had been received
in evidence at the trial in the Circuit Court and incor-
porated in the bill of exceptions. In another stipula-
tion it was agreed that the two causes should be con-
solidated.

1. Section 5293, L. O. L., enacted to protect food
fishes, reads:

"It shall be unlawful for any person or persons to
take or fish for salmon fish or sturgeon in any of the
waters of this state, or in any of the waters upon which
this state has concurrent jurisdiction, by any means
whatever, except with hook and line, commonly called
angling, without first having obtained a license there-
for, as in this act hereinafter provided."

Another clause of the statute is as follows:

"It shall be unlawful for any person to take or fish
for salmon, sturgeon, or other anadromous fish in any
waters of this state unless such person be a citizen of
the United States, or has declared his intention to be-
come such, and has been a *bona fide* resident of the
State of Oregon, or the States of Washington or Idaho,
for the period of six months; provided, that a license
issued by the State of Washington, such state having
concurrent jurisdiction on the Columbia River with
this state shall be deemed valid as to gill nets, and as
to gill net fishermen, for use on the Columbia River, as
though issued by the fish warden of this state. Any
person desiring to fish for salmon, sturgeon, or other
anadromous fish in any such rivers or waters, may go
before any county clerk of any county in this state and
furnish satisfactory evidence of his citizenship, or of

the fact that he has declared his intention to become such one year prior thereto, and file his own affidavit and the affidavit of two other persons to the effect that he is and has been for six months prior thereto an actual *bona fide* resident of this state, and thereupon such recorder or clerk shall issue to him a certificate briefly reciting these facts, and thereafter in any prosecution against such person for a violation of the provisions of this act, such certificate or duly authenticated copies of the record in the office of the clerk or recorder relative thereto, shall be *prima facie* evidence of his citizenship and residence as in this act required. But in all prosecutions under this act the burden of proof shall be on the defendant to establish the facts of his citizenship and residence'': Section 5298, L. O. L.)

It is maintained that the latter enactment, thus attempting to exclude nonresidents of Oregon from the right to take or fish for salmon in the Columbia River with a gill net, violates section 20 of Article I of the Organic Act of this state, which reads:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

This clause of the fundamental law was evidently designed to protect the rights of citizens of Oregon only. The section of the statute last quoted guarantees to each resident of Oregon, who is also a citizen of the United States, the right to fish for salmon in the waters of this state upon making the required proof and securing the necessary license, and, this being so, there is no discrimination as to such citizens. The evident object of the enactment was to protect Oregon fishermen from men engaged in that business who came to this state when the season opened, pursued their calling, and

when the season closed returned to their homes to ply their occupation in other waters, thereby rapidly depleting the supply of a valuable food product which, if properly cared for, could be reasonably conserved to the advantage of resident fishermen. The statute complained of affects alike all persons, possessing the requisite qualifications, who pursue the same business under similar circumstances and conditions, and for that reason it is not class legislation: *In re Oberg,* 21 Or. 406 (28 Pac. 130, 14 L. R. A. 577) ; *State* v. *Randolph,* 23 Or. 74 (31 Pac. 201, 37 Am. St. Rep. 655, 17 L. R. A. 470) ; *State ex rel.* v. *Frazier,* 36 Or. 178 (59 Pac. 5) ; *State* v. *Thompson,* 47 Or. 492 (84 Pac. 476, 8 Ann. Cas. 646, 4 L. R. A. (N. S.) 480; *State* v. *Muller,* 48 Or. 252 (85 Pac. 855) ; *State* v. *Baker,* 50 Or. 381 (92 Pac. 1076, 13 L. R. A. (N. S.) 1040) ; *Churchill* v. *City of Albany,* 65 Or. 442 (133 Pac. 632 Ann. Cas. 1915A, 1094.)

2. It is insisted that Section 5298, L. O. L., trenches upon a clause of the Fourteenth Amendment of the Constitution of the United States in that the statute is an attempt upon the part of the State of Oregon to make a law which, if enforced, would abridge the privileges and immunities of citizens of the United States. Before such privileges can be infringed it must satisfactorily appear that the authority of a person to take and catch salmon in the Columbia River is a right which is guaranteed to, and may be exercised by, every citizen of the United States, though he may be a nonresident of the State of Oregon and Washington. The business which is protected from interference by state legislation must be a calling which any person can pursue in any place in the United States as of common right, subject, however, to such reasonable regulations as the state may impose, in respect to the time, or manner of

enjoyment, in order to promote the greatest good to the greatest number of its citizens.

The qualified ownership of roving fish in navigable waters within a state is in that sovereignty in trust for its citizens alone: *State* v. *Hume,* 52 Or. 1, 5 (95 Pac. 808). Therefore, a state in exercising a measure of its police power may, by an enactment, protect such fish by prohibiting for a time their taking, or it may impose upon their catching such reasonable regulations as may be deemed proper, and for that purpose it may wholly exclude persons who are not residents from catching or taking fish in its waters by any means. In *Barbier* v. *Connolly,* 113 U. S. 27, 32 (28 L. Ed. 923, 5 Sup. Ct. Rep. 357, 360), Mr. Justice FIELD, discussing the restriction of the Fourteenth Amendment of the Federal Constitution as to the facts of that case, says:

"Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

To the same effect, see *Jones* v. *Union County,* 63 Or. 566, 575 (127 Pac. 781, 42 L. R. A. (N. S.) 1035), where will be found a number of cases deciding this question in the same manner. Nonresidents of Oregon who may be citizens of the United States and of another state have no inherent right to take or catch migratory fish in the navigable waters of Oregon after a statute has been enacted by this state prohibiting the exercise of the privilege. Hence Section 5298, L. O. L., does not contravene the amendment of the Federal Constitution invoked to annul it.

3. It is asserted that since the State of Washington has equal jurisdiction with Oregon over the Columbia

River, and since the legislature of Washington has not concurred in enacting any statute similar to Section 5298, L. O. L., that provision is void, and an error was committed in not discharging the defendant. In *Nielsen* v. *Oregon*, 212 U. S. 315 (53 L. Ed. 528, 29 Sup. Ct. Rep. 383), the plaintiff in error was found guilty in a justice court of Clatsop County, Oregon, of maintaining a purse net in the Columbia River in violation of a statute of this state, and, the conviction having been ratified by the Circuit Court of Oregon for that county, the latter judgment was affirmed by this court: *State* v. *Nielsen*, 51 Or. 588 (95 Pac. 720, 131 Am. St. Rep. 765, 16 Ann. Cas. 1113). An agreed statement of facts upon which the cause was tried showed that Nielsen was an actual *bona fide* resident and inhabitant of the State of Washington and a citizen of the United States; that he had duly obtained from the proper authority of that state a license authorizing him to maintain in the Columbia River a purse net; and that he was engaged in operating such net within the limits of the State of Washington at the time he was arrested and prosecuted in the courts of Oregon. The law of this state, which he was charged with violating, was, as far as material, as follows:

"It shall hereafter be unlawful to operate or maintain within any of the rivers of this state or of the Columbia River, * * any purse net or other like seine for the purpose of catching or taking salmon."

By another section of the act any person convicted of violating any of its provisions was guilty of a misdemeanor and subject to a prescribed penalty: Gen. Laws Or. 1907, p. 154. The law in force in the State of Washington at the time Nielsen was thus convicted, as far as important, reads:

"The use of * * purse nets * * for catching salmon is hereby authorized in all the waters of this state * * subject to the regulation and license hereinafter provided for or otherwise required by law": Sess. Laws Wash. 1899, p. 194.

The laws of Oregon then in force prohibited the use of such a net. The judgment rendered by this court against Nielsen was reversed by the Supreme Court of the United States, which held that where two states have concurrent jurisdiction over the same territory, which is partly located in one state and partly in the other, one state cannot prosecute a person for an act *malum prohibitum* by its own laws, and which was committed within the other state by authority of the latter, and that a person who held a purse-net license from the State of Washington could not be prosecuted for using such net on the Washington side of the Columbia River in the courts of Oregon for violating the statutes of the latter state prohibiting the use of a net of that kind.

In *Re Mattson* (C. C.), 69 Fed. 535, the petitioner for a writ of *habeas corpus* in the Circuit Court of the United States for the District of Oregon showed that he was imprisoned upon a conviction in the Circuit Court of the State of Oregon for Clatsop County of fishing for salmon in the Columbia River on Sunday, within the territorial limits of the State of Washington, in violation of the laws of the State of Oregon, which enactment established a weekly close season for that river and made the taking of such fish in that stream on the first day of the week a misdemeanor: Section 5237, L. O. L. The laws of the State of Washington in force when Mattson was imprisoned permitted the catching of salmon in the Columbia River upon Sunday. Based upon such statement of facts the petitioner was dis-

charged by Judge BELLINGER who, in referring to the concurrent jurisdiction of the States of Oregon and Washington over the Columbia River, the channel of which formed their common boundary, said:

"It is clear, therefore, that this right in each state is not subject to control or regulation by the other, unless there is mutual agreement to that end."

In *Ex parte Desjeiro* and *Ex parte Furia* (C. C.), 152 Fed. 1004, each petitioner had been convicted in a Justice's Court for Clatsop County, Oregon, of unlawfully fishing for salmon in the Columbia River without first having been a *bona fide* resident of the States of Oregon, Washington, or Idaho for a period of six months prior thereto, and in violation of what is now practically Section 5298, L. O. L. The facts disclosed at their trial were that Desjeiro was, at the time, charged in the complaint upon which he was convicted an actual resident and inhabitant of the State of California and a subject of the King of Italy. Furia was an actual resident of the same state and a naturalized citizen of the United States. The laws of the State of Washington, then in force, authorized the issuance of fishing licenses. Another clause of the statute of that state then and now in force, reads:

"No license shall be issued to any person who is not a citizen of the United States, unless such person has declared his intention to become such one year prior thereto, and is and has been for one year immediately prior to the time of the application for license an actual resident of the State of Washington. * * Provided, licenses issued by the State of Oregon shall be deemed valid as to gill nets for use on the Columbia River as though issued by the fish commissioner of this state": Laws Wash. 1899, c. 117, § 2; Pierce's Wash. Code, 1912, tit. 191, § 65.

Based on these facts, Judge WOLVERTON, referring to a clause of B. & C. Comp., which is now incorporated in L. O. L. as Section 5298, says:

"If the act was void as it respects a citizen of the State of Washington, being general, it is void as to every other citizen, whether of the State of Washington or California, or elsewhere. It is the act of concurrence between the two states, in the exercise of legislative authority, that validates the act and gives it the force of law, and unless there is a concurrence or assent by both states to the enactment, it cannot have that force. This is the doctrine of the Mattson case, and it has direct application to the case at bar. Now, Section 4092, as amended, makes it a misdemeanor for any person not a resident of the state for the period of six months preceding to take or fish for salmon fish in any of the waters of the state. This is a specific offense within itself. An examination of the laws of the State of Washington will disclose the fact that there is no such offense established within that state, and hence there is no concurrence in the laws of the two states as to the offense. In each state, however, it is required that parties desiring to fish with gill nets shall take out a license, and in each a violation of any of the provisions touching the occupation of fishing within the waters thereof is made a misdemeanor, so that it may be said, perhaps, that the states have legislated concurrently upon that subject. By the Washington act a person must be a resident of the state for one year next preceding before a license can be issued to him; in Oregon the time is fixed at six months; but this is a matter of minor importance, and it may be said that the laws in that regard are in all material respects concurrent. But it is not the offense of fishing without a license that is complained against. It is the offense of fishing without being a resident of the state; and, the State of Washington not having concurred in this legislation, the act is void as to all persons, whether they be citizens of Washington or California, and is within the doctrine of the Mattson case": 69 Fed. 535.

The catching of salmon in any of the waters of Oregon by a person who was not a citizen of the United States, or had not declared his intention to become such and had not been an actual resident of the state for six months immediately prior to the time of engaging in that business was first made a misdemeanor by an act approved February 20, 1891: Laws Or. 1891, p. 129. This statute created a substantive offense and prescribed a penalty for a violation thereof. That act was repealed by another, approved October 18, 1898. Section 12 of the latter act made it unlawful for any person to fish for salmon in any of the waters of Oregon, or in any of the waters upon which this state has concurrent jurisdiction, without first having obtained a license therefor. Section 16 of that enactment stipulated that any person desiring to secure such license should make written application therefor to the fish commissioner, accompanied by his affidavit that he was a citizen of the United States, or had declared his intention to become such, that he was and had been for six months preceding his application a *bona fide* resident of the State of Oregon, and that by his paying the required fee a license should thereupon be issued to him. Section 36 provided that any person violating any of the provisions of such act was to be deemed guilty of a misdemeanor and upon conviction should be punished, etc.: Laws Or. 1898, p. 37. It will thus be seen that the offense of catching salmon in the Columbia River by a person who was not a *bona fide* resident of the State of Oregon was expressly repealed and another act was substituted' in lieu thereof, making the taking of such fish from that stream by a person without first having obtained a license a misdemeanor.

Sections 12 and 16 of the act last referred to were amended by Sections 31 and 32 of the act of February

28, 1901: Laws Or. 1901, p. 328. These amended sections were incorporated in B. & C. Comp. as Sections 4092 and 4093, respectively. Section 4089 of that compilation made it unlawful for any person to fish for salmon in any of the waters of this state, or in any of the waters upon which Oregon has concurrent jurisdiction, by any means whatever, except with hook and line, without first having obtained a license therefor. Section 4092 asserted it to be unlawful for any person to fish for salmon in any of the waters of this state unless he was a citizen of the United States or had declared his intention to become such and had been a resident of Oregon for six months. A license issued by the State of Washington was proclaimed to be valid as to gill-net fishermen for use on the Columbia River. Section 4093 provided that any person desiring to obtain such a license should present a written application, accompanied by his affidavit, to the fish warden, showing that he was a citizen of the United States or had declared his intention to become such and had been for six months a resident of Oregon. A corroborative affidavit of three freeholders was also required, upon the presentation of which and the payment of a fee a license was to be issued to the applicant. Section 4113 provided that a violation of any of such provisions constituted a misdemeanor, and any person convicted thereof should be punished, etc.

Construing together Sections 4089, 4092, 4093 and 4113 of B. & C. Comp. shows that the offense of catching salmon by a person who did not possess the requisite qualifications of citizenship and residence was merged into the crime of taking such fish from the waters specified without first having obtained a license therefor.

Section 4092, B. & C. Comp., was amended by Laws Or. 1901, page 339, Section 31; Laws Or. 1903, page 218; Laws Or. 1907, Chapter 73, page 128; Laws Or. 1909, Chapter 234, page 466, Section 2. The last amendment is incorporated in L. O. L. as Section 5298. Section 4093, B. & C. Comp., was amended by Laws Or. 1903, page 218, Section 2, whereby the previous method of securing a license by the applicant making the requisite proof of citizenship and residence was omitted. That section was again amended by Laws Or. 1905, page 115, Section 1, but no material change was made in the last preceding enactment, nor was the applicant for a license required to submit an affidavit to substantiate his citizenship or residence. Section 4093, B. & C. Comp., appears to have been omitted from L. O. L., though we have been unable to find an express amendment or repeal thereof. In the table of comparative sections in the later compilations reference is made to the section last noted, and attention is called to Sections 5299 and 5310, L. O. L. The first section thus referred to relates to the application for a license to operate a salmon cannery. The second declares that the word "person" or "persons," where used in the act, shall be deemed to include partnerships and corporations.

In selecting and arranging the parts of L. O. L., the compilers evidently thought the amendment of Section 4092, B. & C. Comp., made February 25, 1909, impliedly repealed the next section, and for that reason they did not include in the later work Section 4093, B. & C. Comp. But however this may be, it is believed that the unlawful fishing for salmon in the waters of Oregon is the gravamen of the offense, and not the fishing in such waters by a person who is not a resident of the state.

A careful examination of the statutes of this state, relating to the taking of salmon, leads to the conclusion that the offense charged in one case of unlawfully taking such fish without being a resident of Oregon is not specific within itself, but that the characteristic crime, denounced by the enactment, is the unlawful catching of salmon without first having secured a license, which authority cannot be granted to a person who is not a citizen of the United States, or who has not declared his intention to become such and has not been for the requisite period a resident of the State of Oregon.

The law of the State of Washington in force when this action was instituted, as far as essential to a consideration of this cause, reads:

"That no fishing appliances shall be constructed, operated or maintained upon any of the waters of this state or the Columbia River or its tributaries by any person whomsover, without such person shall have first obtained a license so to do from the fish commissioner of this state, who is hereby authorized to issue said license under the regulations provided by law. * * No license shall be issued to any person who is not a citizen of the United States, unless such person has declared his intention to become such one year prior thereto, and is and has been for one year immediately prior to the time of the application for license an actual resident of the State of Washington": Section 2.

"Any person violating any of the provisions of this act, * * shall be deemed guilty of a misdemeanor, and shall upon conviction therefor for each and every offense, be subject to a fine * * ": Section 20, Laws Wash. 1899, p. 194.

Although the State of Washington in its sovereign capacity holds the title to salmon swimming in the Columbia River in trust for its own citizens, if no law of that state prohibited the catching of such fish, it is

probable that any nonresident, whether or not he was a citizen of the United States, might lawfully engage in that business. Without such legislation, the defendant in this action might well have insisted at his trial, and urged on this appeal that he was fishing in a stream over which the State of Washington had concurrent jurisdiction, and, such being true, the State of Oregon could not legally punish him for pursuing a lawful business, though he was catching salmon within the borders of the latter state. In its legislation the State of Washington has concurred in the enactments of this state, prohibiting the catching of salmon in the Columbia River without a license. There is a mutual agreement to that end. That the laws of the State of Washington demand a longer residence in that state, as a condition precedent to obtaining a license to catch such fish in the Columbia River, than is demanded by the statutes of Oregon in order to secure a similar authority, is unimportant. Each state has concurred with the other in its legislation on this subject.

If, however, the catching of salmon by means of a gill net in the Columbia River by a person who is not a resident of Oregon be regarded as constituting a distinct offense, upon a conviction for which a penalty may legally be imposed, it is believed that the judgments rendered herein can be sustained, though the statute of Washington prohibits the taking of such fish by a person without first having obtained a license, and also makes a residence in that state for one year a condition precedent to securing such authority. With respect to the statues of these states, assuming that our enactment is as last hereinbefore stated, there would be a diversity as to the essential facts constituting the crime, the time of residence in the respective states, and possibly as to the degree of punishment

that might be inflicted.    There would be, however, a
unity of prohibiting, for the term of six months at
least, the catching of salmon in that river.    Thus it
appears that the act charged is condemned alike by the
laws of Oregon and of Washington.    There is no grant
of authority for it by the latter state.    Our sister com-
monwealth having promulgated a rule on the subject
which measurably conforms to our own, the defendant
cannot claim immunity through any lack of legislation
on either side of the boundary.    We conclude, there-
fore, that the rule announced in *Ex parte Desjeiro*
(C. C.), 152 Fed. 1004, is not controlling herein.

4. Section 4093, B. & C. Comp., originally read in
part:

"Any person desiring to obtain a license to take or
catch salmon fish or sturgeon in any of the waters of
this state, in any manner whatever, either working up-
on as employer or employee of any * * gill net, * *
whether such person is the owner of such application or
otherwise, shall present in writing to the fish warden
his application."

This section was amended February 24, 1903, and the
words, "either working upon as employer or em-
ployee," etc., were omitted: Laws Or. 1903, p. 218. . A
further amendment of the section was made February
10, 1905, but the words so omitted were not reincor-
porated: Laws Or. 1905, p. 115.    Notwithstanding the
exclusion of the words referred to, we believe the lan-
guage is reasonably implied in Section 5293, L. O. L.,
which makes it unlawful for any person to take or fish
for salmon without first having obtained a license
therefor, and that this provision of the statute applies
to the person in charge of a fishing boat and a gill net
used for that purpose, though the owner of such appli-
ances may have secured a license authorizing him to

pursue such business. We conclude, therefore, that the defendant was guilty as charged of catching salmon without first having obtained a license.

5. It will be kept in mind that he was also convicted of unlawfully taking such fish from the Columbia River, within Clatsop County, Oregon, without being a resident of this state. It is believed that such charge should have been made by an allegation of unlawfully fishing without a license. Since the offenses as averred in the complaints and admitted in the agreed statements of facts were committed on different days, they constitue separate misdemeanors, and as the fines imposed in each instance were identical, the judgment in the case of unlawfully fishing without being a resident of this state can be upheld by invoking Section 3 of Article VII of the Constitution of Oregon.

It follows that the judgment in each case should be affirmed, and it is so ordered.    AFFIRMED.